JOHN T. RITCHEY ET AL. V. JAMES E. SEELEY.[*]

FILED MARCH 4, 1903. No. 12,564.

1. Answer: MISTAKE IN NAME: TESTIMONY. The testimony of an at-
torney who prepared an answer is competent to show that by
inadvertence and mistake he used the name of one party to the
action while intending to name another party.

2. Foreclosure: DEFICIENCY: CREDITOR'S BILL: EVIDENCE. On the fore-
closure of a mortgage a deficiency judgment was entered against
R. and G., the mortgagors. The judgment creditor thereafter
brought an action to subject a farm conveyed by R. to his son
to the payment of this judgment. The conveyance was made
some two years prior to the entry of the deficiency judgment.
Prior to the foreclosure proceedings R. had conveyed to G. his
interest in the mortgaged premises, and G. had assumed and
agreed to pay the mortgage. R. testified that he had no knowledge
of the foreclosure proceedings and offered to show that at the
time he made the conveyance to his son he understood that G. was
alone liable for the mortgage debt. Held, That R.'s understand-
ing was immaterial and incompetent, but that it would be com-

* Judgment vacated. See opinion, p. 127, post.

petent and material to show that a solvent and responsible party had assumed the mortgage debt on which the deficiency judgment was entered, as bearing on the question of the character of the conveyance by R. to his son, and whether fraudulent or not, but that the offer did not go far enough, in not proposing to show that G. was solvent and able to meet any deficiency that might arise after exhausting the mortgage security.

ERROR to the district court for Cass county: PAUL JESSEN, DISTRICT JUDGE. *Reversed.*

*Mathew Gering,* for plaintiffs in error.

*Webster S. Morlan, Allen J. Beeson, Jesse L. Root* and *S. R Smith, contra.*

DUFFIE, C.

Some time in 1894 John T. Ritchey, one of the plaintiffs in error, and James H. Goodrich purchased 800 acres of land in Hayes county, Nebraska. James E. Seeley, the defendant in error, held a mortgage on the land which Ritchey and Goodrich discharged, giving their own note for $2,650 secured by mortgage in lieu thereof. Foreclosure proceedings were instituted on this mortgage and a decree of foreclosure entered March 24, 1896. A deficiency judgment for $2,050 was ordered by the district court for Hayes county against Ritchey and Goodrich November 23, 1897, but this was not entered of record by the clerk until April 16, 1900, when the same was ordered journalized. A copy of the order directing the deficiency judgment was filed in the office of the clerk of the district court for Cass county, February 18, 1898, and a transcript of the judgment itself was filed in said county on August 2, 1900. Execution issued on this judgment September 14, 1900, and was returned wholly unsatisfied. For some years previous to these transactions John T. Ritchey was the owner of 240 acres of land in Cass county, which he conveyed to his son Edward on

March 15, 1897, for the consideration expressed in the deed, of $9,600, and this action was brought by the defendant in error to subject said land to the payment of his deficiency judgment. A decree was entered in favor of the plaintiff below, and the defendants have taken a writ of error to this court complaining that the decree is not supported by the evidence and that the court refused to receive and consider certain evidence which they claim was competent and material. It is first insisted that the district court for Hayes county had no jurisdiction to enter a deficiency judgment against the defendants, and the act of the legislature of 1897, repealing the statute then in force allowing a deficiency judgment to be entered on the foreclosure of a mortgage, is referred to in support of plaintiffs' contention. We have held in several cases that the repeal of the statute permitting the recovery of deficiency judgments did not affect actions then pending. *Thompson v. West,* 59 Neb. 677, 49 L. R. A., 337; *Hanscom v. Meyer,* 61 Neb. 798; *Patrick v. National Bank of Commerce,* 63 Neb. 200.

Some time in 1893 a farm of 120 acres in Cass county, known as the "Walters Farm," was sold under a decree of foreclosure and bid in by John T. Ritchey, as is claimed, for his son, Edward Ritchey, one of the plaintiffs in error. The sheriff's deed was made to Edward Ritchey, who took possession and occupied the land, either by himself or his tenants, for three or four years, and until a sale by him to one Henry Bornemeyer, made in 1897. A consideration of this transaction becomes material, for the reason that it is claimed by the plaintiffs in error that the proceeds of the sale of this farm was paid by Edward to his father on the purchase of the 240-acre farm, the conveyance of which is assailed in this action; while the defendant in error claims that this farm, while standing in the name of Edward Ritchey, was purchased and paid for by his father, who was the real owner thereof and of right entitled to the purchase money.

Complaint is made that the court unduly extended the

privilege of cross-examining John T. Ritchey in relation to the purchase of this farm, to the payment of the consideration, and whose money was used in the payment. The evidence is undisputed that $4,000 in cash paid by Bornemeyer was turned over by Edward Ritchey to his father, and whether this was a bona-fide payment of that amount on a sale of the 240-acre farm, made by the father to his son, or whether the money actually belonged to the father, was a question before the court necessary for its decision, and depending principally upon the evidence of John T. and Edward Ritchey. That either or both of these witnesses should be subjected to a most searching cross-examination relating to that transaction ought not to be questioned. It was a dealing between father and son, which if honestly made ought to be open to the creditors of either in all its details, and neither party can, with any degree of fairness, claim that any light that they can throw upon the transaction ought to be denied by any technical objections made under the guise that such inquiries are not cross-examination under the strict rules applicable to the cross-examination of disinterested witnesses. The court did not unduly extend the privilege of cross-examination in this case. After the conveyance of this 120 acres of land to Edward Ritchey, some litigation took place concerning the same, in which Edward and his father were parties defendant. In an answer filed by them in that case occurs the following allegation: "That the said John T. Ritchey continued after such sale to occupy and control said land and so continued to do until about the month of February, 1897, when said Ritchey conveyed said land to the defendant Henry Bornemeyer, Sr., who now occupies the same and claims to own it." John T. Ritchey had testified that he had no interest in this land and that after the conveyance to his son his son had owned, occupied and controlled the same until the sale to Bornemeyer, and this answer and the above allegation were offered by way of impeachment and contradiction of this testimony. Ritchey testified that at the time he signed

and verified this answer he did not know it contained the above-quoted paragraph, and called Byron Clark, his attorney who had prepared the same, and offered to show by him that the name John T. Ritchey appearing in the said paragraph was a clerical error made in the preparation thereof, and that the name intended to be used was that of Edward Ritchey. On the objection of the defendant in error, this evidence was excluded, and it is now said in his brief that "the court could as readily determine whether it was intended as meaning Edward Ritchey or John T. Ritchey as could the witness Clark."

· Under ordinary circumstances, and with reference to ordinary writings or contracts, this may be true; but here was a pleading prepared by the attorney having full charge of the case, and presumably knowledge obtained from his clients of all the circumstances surrounding it. Clark, who was attorney for both John T. and Edward Ritchey, drew this answer. It is not an uncommon circumstance that an attorney, in preparing a pleading, inadvertently uses the name of one party while intending to name the other. No one has such absolute knowledge of what was intended as the attorney himself. In this case it is undoubtedly true that the evidence is wholly undisputed that Edward Ritchey alone was in possession of the 120-acre farm, either by himself or his tenants, from the time the same was conveyed to him until its sale to Bornemeyer, and his deed to Bornemeyer, which was introduced in evidence, shows conclusively that the clause in the answer above referred to, as follows: "When said Ritchey conveyed said land to the defendant Henry Bornemeyer, Sr.," pointed out the Ritchey intended to be named in the answer as Edward Ritchey. Under these circumstances it may be true that the court could not have been misled by a clerical error in naming John T. Ritchey when Edward Ritchey was intended. But however that may be, this answer was introduced to contradict the evidence of John T. Ritchey given upon the trial, to the effect that he never had any interest in the land, the court received

it for that purpose—it was wholly immaterial for any
other—and defendant in error now insists, as he probably
did in the court below, that it was for the court to say
from the mere reading of the answer whether any mistake
in drawing it had been made. That the court must de-
termine whether the name "Edward" or "John T." was
intended is undoubtedly true; but the court in determin-
ing that question should take into consideration all proper
and material evidence upon the issue, and we regard the
evidence of Mr. Clark, who prepared the answer, as not
only competent, but quite material, and evidence which
the court should have received and considered.

Some time after Ritchey and Goodrich had purchased
the Hayes county land Ritchey conveyed his interest
therein to Goodrich, who assumed and agreed to pay the
mortgage indebtedness thereon. Plaintiffs in error offered
to show by John T. Ritchey that at the time he conveyed
his 240-acre farm to his son he had no knowledge of this
deficiency judgment or any claim made therefor, and did
not understand that he was liable upon the debt which had
been assumed by Goodrich. This evidence was refused by
the court and this ruling is assigned as error. The peti-
tion in foreclosure was filed in the district court for Hayes
county on August 31, 1895; summons was served on John
T. Ritchey and Phœbe Ritchey, his wife, in Cass county,
Nebraska, September 11, 1895, by delivering to Phœbe
Ritchey a copy of the summons, and on John T. Ritchey
by leaving a copy at his usual place of residence. It may
well be that this copy left for him never came to his knowl-
edge and that he had no personal knowledge of the exist-
ence of the suit or the claim made against him. The
notice of an application for a deficiency judgment was
served upon him personally in Cass county on August 16,
1899, more than two years after the conveyance to his son
which is attacked in this case. As a matter of law it will
be conceded, of course, that a conveyance by Ritchey to
Goodrich of the Hayes county land and Goodrich's assump-
tion of the mortgage thereon did not release Ritchey from

the payment of said mortgage, and that he was still liable for the debt; but as between himself and Goodrich the latter was primarily liable, and if Goodrich was responsible. in 1897, when Ritchey conveyed his farm to his son, it is a circumstance that ought to be taken into consideration by the court in determining whether such conveyance was fraudulent and made for the purpose of defrauding the creditors of Ritchey. While he may have been liable to Seeley for the payment of this debt, it is a matter of some importance that a solvent third party had agreed to relieve him of liability therefor, and if this was the only debt for which he was liable at the time it is a matter of great interest in determining the character of his conveyance to his son, whether fraudulent or not, that a third party had assumed and agreed to relieve him from this liability. But Goodrich was one of the defendants against whom execution, issued on the deficiency judgment, had been returned unsatisfied. At the time of the trial Goodrich certainly was not responsible, and we think that the offer should have gone further and have been to show that he was solvent and able to pay any deficiency that might remain after exhausting the mortgaged premises when the conveyance to Edward Ritchey was made.

Other matters are discussed in the briefs of counsel, but as the case will have to be reversed and a new trial awarded because of the error already pointed out it will be unnecessary to discuss them, as they will not probably arise on the second trial of the case.

For the reasons above given we recommend that the judgment of the district court be reversed and the case remanded for a new trial.

Ames and Albert, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the case remanded for a new trial.

REVERSED AND REMANDED.

On motion to vacate the proceedings in the supreme court and dismiss the error proceedings, the following opinion was filed May 6, 1903. *Motion sustained:*

1. **Death of Defendant in Error After Judgment Below:** VOLUNTARY APPEARANCE BY HIS ATTORNEYS: JURISDICTION OF THIS COURT. Seeley obtained a judgment in the district court, and after his death a petition in error making Seeley the sole party defendant was filed in this court, and attorneys of this court who were attorneys of record for Seeley in the district court, filed with said petition in error a written statement, signed by them, as attorneys for Seeley, purporting to waive the issuing of summons in error and to enter the voluntary appearance of Seeley in this court. *Held*, That this court acquired no jurisdiction.

2. **Void Judgment.** A formal judgment entered in this court upon such attempted voluntary appearance is void, and will be so declared, when, at the same term at which the judgment was entered, the facts are brought to the knowledge of the court.

SEDGWICK, J.

James E. Seeley recovered a judgment against John T. Ritchey and Edward Ritchey in the district court for Cass county on the 10th day of January, 1902. On the 25th day of February, 1902, a petition in error was filed in this court by the said John T. Ritchey and Edward Ritchey against the said James E. Seeley to reverse the judgment. No summons in error was issued on this petition, but with the petition in error there was filed in this court a "voluntary appearance" and waiver of the issuance and service of summons in error, which was in writing, and signed by the attorneys who were the attorneys of record for the said James E. Seeley in the district court.

The said Seeley died four days before the petition in error and "voluntary appearance and waiver" were filed in this court. Afterwards the cause was regularly submitted to this court for determination without any suggestion of the death of the said Seeley, and at the present term of court a judgment was formally entered herein reversing the judgment of the district court and remanding the cause for further proceedings. Afterward the at-

torneys who had represented Mr. Seeley in the lower court, and had assumed to represent him in this court, appeared as friends of the court and filed an objection to the jurisdiction of the court and motion to "vacate, quash, and hold for naught" all the proceedings had in this court in the said case, and "dismiss the said error proceedings." We think that this motion must be sustained. Proceedings in error in this court to review a judgment of the district court constitute a new action having for its object the reversal of the judgment complained of. "The proceedings in this court are quite analogous to those in ordinary actions. The plaintiff in error is required, within the time limited by the statute, to file a petition showing his right to the relief demanded. He must bring his adversary into court in the usual way and affirmatively establish the material averments of his pleading." *Webster v. City of Hastings,* 56 Neb. 245, 246. This was an attempt to begin and prosecute an action against one who was already dead, and such proceedings could not give this court any jurisdiction. The case is to be distinguished from *Link v. Reeves,* 63 Neb. 424. In that case it was held that service of summons in error upon the attorney of record in the lower court was good service, although the defendant in error was dead at the time of the service. This was predicated upon the peculiar language of the statute, which provides that "a service on the attorney of record in the original case shall be sufficient,"* but in that case the petition in error was filed and the summons issued on the same day of and presumably before, the death of the defendant in error. The filing of the petition in error and issuance of summons were valid because the defendant in error was living at the time, and it was thought that service of summons upon the attorney of record in the lower court was authorized by the express language of the statute above quoted. If the action had been begun against Mr. Seeley in his lifetime by filing a petition and issuing

* Code of Civil Procedure, sec. 584.

summons in error, such summons might be served after his death upon his attorney of record in the lower court, and if such summons had been properly served before his death, the action, if relating to real estate, might be revived against his heirs, and if relating to personal property might be revived against his personal representative. *Urlau v. Ruhe,* 63 Neb. 883.* But the filing of a petition against a dead man is a nullity, and no summons or appearance thereon can give the court any jurisdiction. "When the record shows that no jurisdiction over the defendant has been acquired, the judgment rendered against such defendant is void, and its invalidity may be shown in any action in which it may be called in question." *Fogg v. Ellis,* 61 Neb. 829. This judgment having been entered at the present term of court, we have no doubt of the power and duty of this court, upon its attention being called to its want of jurisdiction to render such judgment, to vacate the same.

The motion is sustained.

MOTION SUSTAINED.

The following opinion on rehearing was filed December 16, 1903. *Former decision, Ritchey v. Seeley, ante,* p. *127, re-examined and adhered to,* SULLIVAN, C. J., dissenting:

HOLCOMB, J.

A re-examination of the points involved in the present controversy which were considered and decided at a former hearing is productive of no different result or conclusion from that heretofore reached and announced in the opinion filed in the case. *Ritchey v. Seeley, ante,* p. 127. The precise point in controversy is whether under the facts stated in the former opinion this court has acquired jurisdiction over the cause and the parties to the controversy so that it may rightfully review the record

---

* This case appears in 89 N. W. 427, as *Urlau v. Weeth.*

13

and pass upon the alleged errors occurring at the trial in the court below. While a proceeding in error under our statute is not essentially the institution of a new and independent action, but rather a proceeding whereby the cause may be removed from the trial court to this court for the purpose of having reviewed alleged errors committed during the progress of the action in the court in which final judgment was rendered, yet, as has been stated by this and the courts of other jurisdictions: "The proceedings in this court are quite analogous to those in ordinary actions. The plaintiff in error is required, within the time limited by the statute, to file a petition showing his right to the relief demanded. He must bring his adversary into court in the usual way and affirmatively establish the material averments of his pleadings." *Webster v. City of Hastings*, 56 Neb. 245, 246, and the authorities therein cited. Repeated decisions of this court hold that in order to entitle an aggrieved party to a review of the record of the trial had in the district court, the requirements of the statute providing for a review by error proceedings must be complied with—that is, that the error proceedings must be begun within the time limited; that a petition in error must be filed in the reviewing court, accompanied by a duly authenticated transcript of the record which it is sought to have reviewed as a basis for the obtaining of such review; that thereupon a summons in error may issue, and service be had, and the adverse party thus brought into court and subjected to its jurisdiction. It is argued that the waiver of summons in the present proceedings by the attorney of record in the lower court is equivalent to a service of summons on the attorney of record, and that the court has thereby acquired jurisdiction over the cause and the parties, and that such service is, on principle, within the rule announced in *Link v. Reeves*, 63 Neb. 424. It may, we think, be seriously doubted whether that part of section 585 of the Code of Civil Procedure wherein it is provided the defendant in error or his attorney may waive

in writing the issuing and service of the summons in error can be construed to mean the attorney of record. While not agreeing entirely with the construction contended for, we are of the opinion that, even if accepted, the difficulties in the way of the plaintiff in error have not thereby been removed. It is more probable that the provision of the section referred to means just what it says; that is, that the defendant in error or his attorney at the time of the waiver, whether it be the attorney of record in the court below or another attorney employed for the purpose of defending the error proceedings, may waive the issuing and service of the summons in error. But it has been held, and we are not disposed to question the correctness of the ruling, that the provision of section 584 authorizing the service of summons in error on the attorney of record in the original case is of itself sufficient authority for such attorney to waive the issuance and service of summons. *McDonald v. Penniston*, 1 Neb. 324. Whichever may be the correct construction, it occurs to us that the crucial point in the present controversy is not whether the attorney of record may waive the issuance and service of summons, but what is the force and effect of the waiver as attempted to be made in the case at bar, and when, if at all, could it become effective? We have decided repeatedly that a summons in error can not issue until after the filing of a petition in error with a transcript of the record of the district court, and that these preliminary steps were necessary in order to give the court jurisdiction. *City of Brownville v. Middleton*, 1 Neb. 10; *Benson v. Michael*, 29 Neb. 131, 133; *Garneau v. Omaha Printing Co.*, 42 Neb. 847, 849; *Jandt v. Deranlieu*, 43 Neb. 422, 423; *Slobodisky v. Curtis*, 58 Neb. 211, 212. If the rule announced in the decisions cited be a sound one, we think it must follow as a logical deduction therefrom that the waiver of the issuance and service of summons can not be of any force or effect even though executed by a defendant in error, or with full authority by his attorney or the attorney of record in the original case,

until there has been filed in the reviewing court a petition
in error with a duly authenticated transcript of the record
which it is sought to have reviewed. This is the view en-
tertained by the supreme court of Ohio in *McGuire v.
Ranney,* 49 Ohio St. 372, and must, we think, be held to
be correct. For the purpose of deciding the precise point
in the present controversy, we have confronting us the
same condition of affairs as would be the case had the
plaintiff in error instituted his error proceedings at the
time he did, and had issued and served, if you please, on
the attorney of record, a summons in error in the ordinary
way; or as would be the case had the attorney of record at
the time of the commencement of the error proceedings
come into court and attempted to waive the issuance and
service of a summons in error. The question, therefore, to
be decided is, can a dissatisfied party to the judgment or
final order in the court below after the death of his ad-
versary institute error proceedings in the appellate court,
and have summons issued and served on the attorney of
record, or have that individual waive issuance and service
thereof, and this court thereby acquire jurisdiction over
the cause and the parties to the controversy? The ques-
tion must, we think, on principle and authority, be an-
swered in the negative. While it is earnestly insisted that
there is no difference in principle between the case at bar
and *Link v. Reeves, supra,* we are satisfied there is a
marked distinction, which is quite apparent upon a care-
ful consideration of the two cases. In the *Link* case the
error proceedings were begun within the time limited by
statute, and against a party who was then living, and the
service subsequently made on the attorney of record was
held good because of the force of the statute providing for
such service. Had the law provided, as undoubtedly might
be done without violating any fundamental principle, that
notice or citation of the commencement of the error pro-
ceedings would be effective, and give the court jurisdic-
tion, if filed in the original case in the court below, it
could not be doubted that compliance with such provisions,

even though after the death of the adverse party, would give this court jurisdiction when the error proceedings were instituted before death, and permit the revival of the action herein in the name of the proper parties as successors to the rights of the deceased. In the present case, however, the error proceedings were instituted subsequent to the death of the defendant in error. There was in reality no action pending, no proceedings begun in this court, and such as were had, were in fact *ex parte*, and not adversary in character. The action had never been properly removed to this court, because the death of one of the parties while it was yet pending in the trial court prevented further proceedings until the action was revived in the name of the proper party. A marked distinction exists between proceedings in error to obtain a reversal of a judgment or final order in a law action and an appeal in a suit in equity, which latter brings up the case for trial *de novo,* and is accomplished solely by the filing in due time in this court of a transcript of the record containing the judgment, decree or final order appealed from. In case of an appeal in a suit in equity, the filing of a transcript operates *ipso facto* as a removal of the cause to the appellate court, and in the event of death, proceedings for a revivor and substitution are authorized as though the action had been pending in the appellate court since prior to the death of the party. But as we have seen, the right to review by proceedings in error is regulated by an altogether different method of procedure, which must be followed in order to obtain such review. Ordinarily, after the death of a party to an action, subsequent action before revivor materially affecting the rights of successors in interest is null and void. This must be so in the nature of things, because the court has lost jurisdiction over the deceased and has not acquired it over his legal representatives. The judgment obtained in the trial court in favor of one who afterwards dies, becomes final, except as the record may be reviewed and the judgment reversed by proceedings in

error conducted in the mode pointed out by statute. In *Kuhnert v. Conde,* 39 Kan. 265, the syllabus reads: "After a judgment was rendered in the district court in favor of the plaintiff, he died; and afterward the defendant, for the purpose of reversing such judgment, filed a petition in error and case in the supreme court, purporting to make the former plaintiff, and him only, the defendant in error. More than one year after the judgment was rendered, it was revived in the district court in the names of the representatives and successors of the former plaintiff. *Held,* That the proceeding in error in the supreme court must be dismissed, for the reason that it was not legally brought in the supreme court, and there has at no time been any defendant in error." It is said in the opinion: "Before any revivor was had or even attempted, an attempt was made to bring the case to the supreme court. Of course that attempt was abortive. It was attempted to make Conde the defendant in error, but as Conde was dead he could not be made a defendant in error. He could not appear in any court and defend, nor could Bird nor any one else legally appear for him as an attorney or otherwise. Bird ceased to be an attorney for Conde when Conde died. No service of summons could be made upon Conde after his death and no waiver of service or of summons could be had by the consent of Bird, or otherwise." "Indeed," says the court, "there never has been any defendant in error in this court; the case has never legally been brought to this court and in law has never been in this court at all and it is now too late to bring it here." *Coffin v. Edgington,* 23 Pac. (Idaho) 80, is a case decided by the supreme court of Idaho. It is there held that in an appeal to that court under provisions of statute requiring notice of appeal the appellate court will not acquire jurisdiction where, after judgment is rendered in the trial court, but before notice of appeal was filed or served, one of the defendants died and no substitution has been made. The proceedings on appeal, it is ruled,

were null and void as to representatives of the deceased defendant. The decision of the Idaho supreme court is in harmony with and follows those of the supreme court of California, several of which are cited in the opinion. The following authorities may also be cited as being in point on the questions herein considered and in support of the conclusion reached: *Harryman v. Harryman,* 49 Md. 67; *Smith v. Cunningham,* 2 Tenn. Ch. 565; *Shartzer v. Love,* 40 Cal. 93; *Branham v. Johnson,* 62 Ind. 259; *Moore v. Slack,* 140 Ind. 38; *Kennard v. Kennard,* 35 Ohio St. 660; *Ray v. Pease,* 37 S. E. (Ga.) 875; *Terry v. Schultz,* 38 S. W. (Tex.) 374. The former judgment is adhered to.

FORMER DECISION ADHERED TO.

SULLIVAN, C. J., dissenting.

I dissent altogether from the reasoning and conclusion of my associates. In this state the writ of error in civil cases has been abolished. But the right to be heard in such cases in the court of last resort is preserved by the constitution. The procedure is statutory. In actions in equity the cause is removed from the district court to this court by filing here a duly certified transcript of the record. Nothing further is required. Whether the action be legal or equitable, the defeated litigant may, after final judgment, transfer the controversy from the district court to this court by filing here a certified copy of the record and procuring the issuance and service, or written waiver, of the statutory process. When this court has obtained jurisdiction either by appeal or error proceeding, it has authority to make a final disposition of the cause by rendering such judgment as the court below should have rendered. The proceedings in this court in the exercise of jurisdiction acquired under the provisions of title 16, Code of Civil Procedure, are, as we said in *Webster v. City of Hastings,* 56 Neb. 245, quite analogous to those in ordinary actions. But certainly the analogy does not

prove that this statutory proceeding for the correction of errors is essentially and for all purposes a new suit. The statute (section 584, Code of Civil Procedure) describes it as a proceeding; that is, a further step in the litigation. Even the writ of error, which was an original writ, and indispensable to the jurisdiction of the appellate court, was said in *Nations v. Johnson,* 24 How. (U. S.) 195, 205, 16 L. ed. 628, to be "rather a continuation of the original litigation than the commencement of a new action." The effect of the proceeding in error is to bring the record of the case into this court for re-examination—to change the forum.

If the legislature had seen fit to do so, notice of any kind might, as in cases of appeal, have been dispensed with altogether, without infringing any constitutional right of the defendant in error. But notice has not been dispensed with. The statute prescribes the conditions upon which a defeated suitor may be heard in this court. If these conditions have been fulfilled in this case, jurisdiction has attached and the order dismissing the proceeding is wrong. The statute provides (section 584, Code of Civil Procedure) that a summons in error shall be issued and served on the defendant in error or his "attorney of record in the original case," or else (section 585, Code of Civil Procedure) that there shall be a waiver in writing of the issuance and service of the summons by "the defendant in error, or his attorney." I can come to no other conclusion, after carefully considering the matter, than that the attorney who is authorized to accept service is the attorney upon whom the statute authorizes service to be made; that is, "the attorney of record in the original case." Service upon such attorney is good service whether the defendant in error be living or dead (*Link v. Reeves,* 63 Neb. 424); and by parity of reasoning a waiver in writing by such attorney is a good waiver under section 585, Code of Civil Procedure, whether the defendant in error be living or dead. In other words, jurisdiction of the cause is obtained when those things have been done

which the law requires to be done in order to transfer
the litigation from the district court to this court.    In
*Link v. Reeves* a summons in error served upon the at-
torney of a dead man was held to be good service.    The
court said: "Robertson being the attorney of record of
Preston Reeves in the original case, the service of sum-
mons upon him conferred jurisdiction, though Mr. Reeves
was then dead."

The written waiver authorized by section 585 was mani-
festly intended as a substitute for, and the legal equivalent
of, the service provided for by section 584.   The legislative
thought was that whoever may be served ought to have
authority to waive service.    The writer of the majority
opinion is surely mistaken in assuming that the legisla-
ture may have authorized waiver of service by an attor-
ney other than the attorney of record in the original case.
To permit one not subject to service to waive service
would be illogical, and, so far as I know, without pre-
cedent in judicial procedure.   The suggestion has been
made that a proceeding against a dead man is a nullity.
But *Link v. Reeves* is an authority to the contrary, and
there are many others. *Hohenthal v. Turnure*, 50 Tex. 1;
*Black v. Hill*, 29 Ohio St. 86; *Cox v. Whitfield*, 18 Ala.
738; *Beard v. Hall*, 79 N. Car. 506.   It would hardly be
claimed that the right of a party to remove a case from
an inferior court to the district court by appeal would
be lost or impaired by the death of his adversary.   A party
against whom judgment has been rendered before a jus-
tice of the peace or in the county court transfers the cause
to the district court by giving a good bond and filing a
transcript within the time limited by the statute.   The
death of the other party after judgment and before the
bond is given and the transcript filed does not prevent the
jurisdiction of the district court from attaching.   In such
cases, as in the case we are considering, the law prescribes
the conditions upon which a change of forum may be had;
and there are no other conditions.   The legislature saw no
necessity for a revivor, and so it was not made a condition

either expressly or by implication.   When the prescribed conditions have been performed, the transfer of the con-troversy from the inferior court to the superior court is effected, and the appellate tribunal should then, if the appellee or defendant in error be dead, direct a substitu-tion of parties and proceed to judgment.  The giving of the bond in such case is a proceeding; so is the filing of the transcript; and yet, notwithstanding the death of the party who recovered the judgment, they are valid and effective steps in the progress of the case.

In the majority opinion it is sought to distinguish this case from *Link v. Reeves* by pointing out that in the latter case the petition in error and transcript had been filed and the summons issued before the death of Reeves.   How is this actually or possibly material?  The action had been pending in the district court, and, as a matter of course, it remained there until this court acquired jurisdiction. When did this court acquire jurisdiction?   When the sum-mons in error was served, and not before.   The service of the process was as essential to a transfer of the litigation as was the filing of the petition in error and transcript. Each step in the proceeding was necessary; each was vain and useless without the other.    When Reeves died this court was not possessed of the action, and it had no more authority to hear and determine than it had in this case when Seeley died.    *Ex parte Munford,* 57 Mo. 603.    In each case the purpose of the unsuccessful party to remove the litigation to this court was unexecuted when the de-fendant in error died.   In each case the action was still pending in the district court and was not pending here. The fact that the pleading and transcript had been filed with the clerk of this court in one case and not in the other is, it seems to me, without legal significance.    In each case the effort to transfer the controversy from the district court to this court during the life of the defendant in error was abortive, and it was no less abortive in one case than in the other.

It is conceded that an appeal will remove a case to this

court without proceeding in the district court to bring in the legal representatives of a party who died after final judgment. The reason is said to be that the law in relation to appeals contemplates a trial *de novo*, and does not require assignment of errors. This can hardly be regarded, if true, as a convincing or even a persuasive reason. The inference does not follow from the premises. But in truth there is, accurately speaking, no trial *de novo* in appeal cases, and there is, necessarily, in such cases an assignment of errors. In both appeal and error cases the judgment of the district court stands until there has been a re-examination of the record. There is then an affirmance, a reversal or a modification. Both methods of review are prescribed by the statute, and the difference between them is formal, rather than substantial. Why the legislature should require a revivor in the district court if one method is pursued and not if the other is followed is beyond comprehension; it is one of those difficult problems which Lord Dundreary would characterize as "a thing no fellow can find out." Suppose there is a revivor in the district court after judgment, what good purpose can it serve? Why is it necessary or desirable that the representative of the deceased litigant be made a party in the district court if the litigation in that court is ended? There seems to be no reason for it, absolutely none, whether the action be legal or equitable. Reason and utility suggest that the order of revivor be made in the court in which the litigation is to be continued, and not in the court in which the controversy has been brought to a conclusion. The first section of the Code of Civil Procedure requires that "its provisions and all proceedings under it shall be liberally construed with a view to promote its object and assist the parties in obtaining justice." The decision dismissing the proceeding in error is, it seems to me, made in utter disregard of this legislative injunction. The plain words of the statute are disregarded in order to give effect to a judicial theory which obstructs justice in this case and has no tendency to promote it in any case.