AFFA C. SEELEY, EXECUTRIX, APPELLANT, v. JOHN T. RITCHEY ET AL., APPELLEES.*

FILED APRIL 18, 1906. No. 14,539.

1. **Fraudulent Conveyances: CONVEYANCE TO SON: PRESUMPTIONS.** The rule is well settled in this state that a conveyance made by a father to his son, or other near relative, is presumptively fraudulent as to existing creditors.

2. **Evidence examined, and *held* not to overcome the presumption of fraud arising from a conveyance by a father to his son.**

APPEAL from the district court for Cass county: BENJAMIN F. GOOD, JUDGE. *Reversed with directions.*

*Jesse L. Root,* for appellant.

*Matthew Gering* and *C. S. Polk, contra.*

DUFFIE, C.

This is the fifth time this case has been before us, the question determined being found in 68 Neb. 120, 127, 129,

* Rehearing allowed. See opinion, p. 433, *post.*

and 73 Neb. 164. The action is a creditor's bill to set aside a deed made by John T. Ritchey to his son Edward Ritchey, and subject the land conveyed thereby to the payment of a deficiency judgment entered against John T. Ritchey on the foreclosure of a mortgage in 1897. The land involved is a farm of 240 acres situated in Cass county, and the expressed consideration in the deed from the father to his son is $9,600. This conveyance was made March 15, 1897. The mortgage foreclosure took place in Hayes county, and, while the deficiency judgment was ordered November 23, 1897, it was not entered of record by the clerk until April 16, 1900. A copy of the order directing the deficiency judgment was filed in the office of the clerk of the district court for Cass county in February, 1898, and the transcript of the judgment, after the same had been journalized, was filed in Cass county on August 2, 1900. The debt secured by the mortgage was contracted by John T. Ritchey and one James H. Goodrich in 1894, and the mortgage covered 800 acres of land in Hayes county, the joint property of the mortgagors. In March, 1896, John T. Ritchey conveyed to Goodrich his interest in the Hayes county land, the deed containing an agreement on the part of Goodrich to assume and pay the mortgage debt. The summons in the foreclosure proceeding was served on Ritchey in Cass county on September 11, 1895, by leaving a copy at his usual place of residence. The dates material to be borne in mind are the date of the mortgage, May 12, 1894; the commencement of foreclosure proceedings and service on Ritchey, September 11, 1895; the order for a deficiency judgment, made November 23, 1897; the transcript of the judgment filed in Cass county, September 14, 1900, after the same had been journalized, and the conveyance of John T. Ritchey to his son, March 15, 1897.

It will be seen from the above that the debt was contracted previous to the conveyance sought to be set aside, and the law is well settled that where the indebtedness was contracted before the execution of the deed, and the

grantor and grantee are near relatives, the burden of proof is on the grantee to establish the *bona fides* of the transaction. *Schott v. Machamer,* 54 Neb. 514; *Kirchman v. Kratky,* 51 Neb. 191; *Carson v. Stevens,* 40 Neb. 112. It is conceded by the appellees that the conveyance from the father to his son throws upon them the burden of establishing the good faith of the transaction. The only parties who could know with absolute certainty whether the transfer was *bona fide,* or was made for the purpose of hindering and defrauding the creditors of John T. Ritchey, the father, are the two parties to the transaction, and it is principally from a consideration of their evidence and the undisputed facts in the case that the decree of the district court must stand or fall.

Another transaction between the father and son has some bearing upon this case. One Franklin Walters died seized of 120 acres of land in the neighborhood of the Ritchey farm. Walters had mortgaged this land to Smith. Subsequent to Walters' death, Smith foreclosed his mortgage making the unknown heirs of Walters defendants. Walters died without issue, and his widow, in October, 1892, sold her interest in the land to John T. Ritchey who took possession thereof. Smith either neglected or refused to sell under his decree of forclosure and after Ritchey purchased the widow's interest he tried to buy the Smith decree. Smith would not sell, and Ritchey induced the clerk of the district court to issue an order of sale on the decree. The land was sold and bid in in the name of Edward Ritchey. Smith resisted confirmation of the sale and, in order to get him to withdraw his objections, John T. Ritchey paid him $75. Smith testified that Ritchey told him he desired to have the land sold under the decree of foreclosure "to clear the title from any of the heirs—to cut out the heirs." At this time Ritchey was administrator of the estate of Franklin Walters, and in that capacity he receipted to the sheriff for a small surplus which the land brought in excess of the decree. After obtaining his sheriff's deed to this land, Edward

Ritchey took possession and occupied it, either by himself or his tenants, for three or four years and until a sale to one Henry Bornemeier, made in 1897. It is claimed by defendants and appellees that the proceeds of the sale of this farm were paid by Edward to his father on the purchase of the 240-acre farm, the conveyance of which is assailed in this action, while the plaintiff and appellant claims that this farm, while standing in the name of Edward Ritchey, was purchased and paid for by his father, he being the real owner thereof, and, of right, entitled to the purchase money. The evidence is undisputed that Bornemeier paid $5,000 for the 120 acres sold him. John T. and Edward Ritchey testified that of this sum $4,000 was paid by Edward to his father on the purchase of the 240-acre farm by Edward. The evidence is undisputed that Bornemeier paid $1,000 in cash, assumed a mortgage for $1,300 then on the land, and gave three notes for the balance of the purchase price, two for $1,000 each and one for $708.

Another matter connected with this 120-acre tract might be mentioned. Both John T. and Edward Ritchey testified on the trial that Edward paid $1,500 of his own money on the purchase at sheriff's sale and that John T. Ritchey furnished the balance of the money, making a gift of that amount to his son. Edward was at that time a minor, and his brother William testifies that he had no money. When asked where he got the money, Edward testified that he had $500 in Waters' Bank in Elmwood, and $700 or $800 in Murty's Bank in Weeping Water; that he drew this money out a short time before the sheriff's sale in 1893 and, with other cash he had around home, delivered it to his father who bid for him at the sale. The bankers were produced upon the trial, and testified that Edward Ritchey never had any money to his credit in either bank. Phoebe Ritchey, the mother of Edward, testified that his father made him a gift of the Walters land, and to our minds the evidence is quite conclusive that what money he furnished for the purchase of this land, if any, did not come from the sources claimed.

It is urged with much force by the defendants that John T. Ritchey could have no intent to defraud creditors in transferring the 240-acre farm to his son, inasmuch as there were no debts outstanding against him, except that held by the plaintiff; that, when he conveyed his interest in the mortgaged premises to Goodrich, Goodrich assumed and agreed to pay the whole mortgage debt and that he supposed the debt had been provided for in this way. It is further urged that he had no knowledge of the fore-closure proceedings and no knowledge that a deficiency judgment had been entered against him, until the transcript was filed in Cass county in 1900. It is true that personal service of the summons was not had on him, but service made by a copy left at his usual place of residence. His wife testified that she placed the copy left for him in the organ and forgot to give it to him until about six weeks after the same had been left by the sheriff. The return shows service on September 11, 1895, and if the copy was given him by his wife within six weeks from that date he must have had knowledge of the suit some-time in October, 1895. Again, the deed from Ritchey to Goodrich bears date March 16, 1896, showing that it was made while the suit was pending, and it is improbable that a pending suit against the land would not be considered and discussed between the parties at the time the transfer was made.

A further matter for consideration in determining the intent with which the conveyance by John T. Ritchey to his son was made is the question of Goodrich's financial ability to carry out his agreement to pay this mortgage. It is true that John T. Ritchey testifies that Goodrich was solvent and able to meet the obligation, but the fact remained that, as a part consideration for the transfer, Goodrich executed his note to Ritchey for $650, payable November 15, 1896, and that this note has never been paid, and Goodrich, at some time after the giving of this note, took the benefit of the bankruptcy act. If John T. Ritchey could not collect from Goodrich his note for $650, he had

little cause to believe that the plaintiff could collect a claim against him of $2,600 or more. Both John T. and Edward Ritchey testified that the land was paid for in the following manner:

| | |
|---|---:|
| Proceeds of sale to Bornemeier, Walters land | $4,000 |
| Check on Bank of Murdock given by son | 150 |
| Cash | 150 |
| 2,500 bushels of corn at 22 to 25 cents a bushel, estimated | 575 |
| 1,800 to 1,900 bushels of wheat at 50 cents a bushel, estimated | 925 |
| Car load hogs | 700 |
| Note | 800 |
| Mortgage assumed | 2,300 |
| | $9,600 |

We have already seen that Bornemeier did not pay cash for the 120 acres of land, and neither John T. nor Edward Ritchey pretended that the notes given Edward by Bornemeier were turned over by him to his father. The cashier of the Bank of Murdock was produced, and his testimony given to the effect that Edward never drew a check for $150 on that bank, and there are other matters making it improbable that other items going to make up the consideration were in fact paid. That the testimony of these two men has been flatly contradicted by undisputed facts, and by evidence which cannot be controverted or doubted, is too apparent from the record. The burden was on them to show the good faith of the transaction. We regret to say that a careful examination of the record convinces us that their testimony is unreliable in many particulars. The truth is easily told. The more critically a truthful statement is examined and questioned, the more apparent its truthfulness appears. Witnesses may be, and often are, honestly mistaken in matters attending a transaction, but it is not probable that so many circumstances could be misunderstood or forgotten by truthful witnesses as is apparent here. Our reading of

the record convinces us that a decree should have been entered for the plaintiff below subjecting the land to the payment of her judgment.

We therefore recommend that the decree of the district court be reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the petition.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the petition.

JUDGMENT ACCORDINGLY.

The following opinion on rehearing was filed February 21, 1907. *Judgment of reversal vacated and judgment of district court affirmed:*

1. **Fraudulent Conveyances: EVIDENCE: BURDEN OF PROOF.** A transfer of real estate by a debtor to a near relative is looked upon with suspicion, and the burden of proving the *bona fides* of the transaction is upon the grantee. Where, however, the evidence shows that the transfer is made when the grantor's indebtedness is only a small amount compared with the value of his property, and his indebtedness is secured by a mortgage on other land apparently worth nearly, if not quite, as much as the indebtedness, the suspicion is removed, and, a consideration being proved, the *bona fides* of the transaction is established.

2. **Evidence.** Upon a rehearing of this case, it is *held* that the evidence is sufficient to overcome the presumption of fraud in the transfer from the father to the son, and the former opinion, *ante*, p. 427, is overruled.

EPPERSON, C.

This case is before the court on rehearing. A history of the litigation relating to the question now considered may be found in 68 Neb. 120, and *ante*, p. 427. The transaction upon which the action is founded may be restated

31

in part as follows: In May, 1894, the defendant John T. Ritchey and one Goodrich gave a mortgage to James E. Seeley on 800 acres of land in Hayes county, Nebraska, to secure an indebtedness of $2,650. The Hayes county land was under the control and management of Goodrich who used it as a ranch. September 11, 1895, foreclosure proceedings were begun, and the Hayes county land sold June 21, 1897. On November 23, 1897, a deficiency judgment was announced against the mortgagors for $2,050, and made of record April 16, 1900. For several years prior to the making of the mortgage John T. Ritchey owned and resided upon 240 acres of land in Cass county. On March 15, 1897, he conveyed this land to his son, the defendant Edward Ritchey. This transfer plaintiff alleges was without consideration and made for the purpose of defrauding the creditors of John T. Ritchey.

A former transaction between the father and the son bears directly upon the question of a consideration for the alleged fraudulent conveyance. John T. Ritchey had an interest in the Walters 120 acres which he conveyed to Edward in 1893. This transfer plaintiff also claims was fraudulent. Other interests in this land were transferred to Edward by virtue of a judicial sale. The legal effect of the transaction between the defendants through which the title to the Walters land was placed in the son has considerable bearing on the case. If the Walters land was in fact the property of the son, then the good faith of the transfer assailed is supported in so far as a partial consideration therefor is established. This we consider as having a bearing on the question in the case. It must be borne in mind that the title to this land was placed in the son in June, 1893, and at that time there was no unsecured indebtedness owing by the father. It is true, proceedings were had which resulted in a judicial sale of the Walters land; that the son was the purchaser at such sale; and that such sale was brought about through the efforts of the father.

Edward Ritchey's title to the Walters land is not as-

sailed by the pleadings in this case.   Nevertheless, plain-
tiff contends that the Walters land was in fact the
property of the father held in trust by the son; that the
selling price thereof belonged, by reason of the sale, to
the father, and therefore it did not constitute any part
of the consideration for the transfer assailed.   Plaintiff's
decedent did not become a creditor of John T. Ritchey
until after the conveyance of the Walters land.   There is
no presumption of fraud against the defendants which
would cast upon them the burden of proving good faith
in that transaction.   The burden is upon a creditor, when
the debt was contracted subsequent to a conveyance as-
sailed as fraudulent, to prove that such was made and
accepted with a fraudulent purpose. *Jansen v. Lewis,* 52
Neb. 556; *Jayne v. Hymer,* 66 Neb. 785.   In *Lavigne v.
Tobin,* 52 Neb. 686, it was held: "Except as against exist-
ing creditors and as against those to whom he contem-
plates becoming indebted, one may gratuitously convey his
property to his wife."   This rule as to the burden of prov-
ing the title to the Walters land will apply, even though
it was not assailed by the pleadings.   We do not over-
look the apparently false testimony of both defendants
herein.   It does appear that their testimony that $1,500
was paid by the son to the father in cash as a partial
consideration for the transfer of the Walters land is
false.   But, believing this testimony false, we must con-
clude that the entire value of the Walters land was a
gift from the father to the son.   There is no inference
deducible that the transfer was in fraud of subsequent
creditors.   It is immaterial as far as the disposition of
this case is concerned to determine whether or not all or
only a part of the value of the Walters land was a gift
from the father to the son.   It is contended by plaintiff
that the Walters land was purchased by John T. Ritchey,
who caused the title to be placed in the name of Edward
Ritchey for the purpose of defrauding the heirs of Wal-
ters, deceased.   The evidence is insufficient to support
this contention.   It is not shown that the price paid at

the judicial sale was inadequate, nor is it shown that the heirs in any way suffered loss by reason of the sale of the Walters land in the manner in which it was sold. There is another fact having some weight in sustaining the defendants' contention that the Walters land was a gift to the son. Edward's elder brother received from his parents 66 acres of valuable land as a gift when he reached his majority, so that the transaction here assailed, which we are called upon to denounce as suspicious, seems to be but an equitable advancement by the father to his son. We cannot conclude from the evidence that the Walters land was held in trust by Edward Ritchey for his father.

It being therefore established that Edward Ritchey was the owner of 120 acres of land, which he either farmed or rented for four years prior to the purchase of the land here in controversy, we conclude that his financial circumstances were such that he could finance the transaction now alleged by plaintiff to be fraudulent. In 1897 the Walters land was sold by Edward Ritchey who received therefor in cash and notes maturing within a few months thereafter the sum of $4,000, which defendants testified was paid to John T. Ritchey as a part of the consideration for the land in controversy. This plaintiff contends was impossible because only $1,000 was paid in cash. We entertain no doubt but that the purchase price of the Walters land was delivered to the elder Ritchey. Taking plaintiff's theory that the Walters land was in fact the property of John T. Ritchey, she is not in a position to deny that the elder Ritchey received the money. Therefore, so far as the $4,000 of the consideration paid to the father for the 240 acres of land is concerned, the question must be determined upon the *bona fides* of Edward's title to the Walters land, which, as above shown, is established. Neither can there be any contention as to the mortgage of $2,600 assumed by Edward, nor as to the note for $800 given by him to his father as a part of the consideration. We can say nothing as to the balance of the consideration

paid in addition to what has been said by this court in the opinion reported *ante,* p. 427.

In March, 1896, John T. Ritchey sold his one-half interest in the Hayes county ranch to Goodrich, who assumed the mortgage, and, even though it was known to Ritchey in March, 1897, that Goodrich was insolvent, it does not appear that John T. Ritchey had any reason to apprehend that a deficiency judgment for any considerable sum would be rendered against him in the future. The Hayes county ranch consisted of 800 acres, which John T. Ritchey considered worth $4,000. The mortgage indebtedness amounted to $2,650, with interest. The appraised value of the land was $2,000. From this it does not seem that, on the date of the deed herein assailed as fraudulent, John T. Ritchey could have penetrated the future and foreseen a deficiency judgment of $2,050. His subsequent conduct does not indicate that he was attempting to conceal his property from his creditors. After the sale of the land to his son, he continued in the grain and stock business, and built an elevator which he sold for $1,750 two years later. As to one small item going to make up the consideration alleged to have been paid for the land, we are convinced that the testimony given by the defendants was false. This was an item of only $150. It does not appear reasonable that parties would wilfully falsify as to this. It was shown that a larger sum had been withdrawn from the bank by Edward Ritchey at about the time of this transfer, and it seems to us that such a mistake is one that might be made by honest men. The land in question was farmed by the son. He controlled it as owner, employed help and in all respects exercised dominion over his property. Later, upon a sale, he fixed the purchase price, refusing to accept the advice of his father as to the amount.

We are mindful of the rule "that, where the indebtedness was contracted before the execution of the deed, and the grantor and grantee are near relatives, the burden of proof is on the grantee to establish the *bona fides* of the

transaction." Such transfers are looked upon with suspicion, and, were the rule otherwise, a debtor in failing circumstances could easily defraud his creditors by conveying his property to the members of his family. Where, however, the transfer is made when the grantor's indebtedness is only a small amount compared with the value of his property, and where the debt in controversy is secured by a mortgage on a large tract of land apparently worth nearly, if not quite, as much as the indebtedness, the suspicion is removed and, a consideration being proved, the good faith of the transfer is established. Were we to follow our own inclination, instead of the law as we believe it to be, we would incline toward a reversal of the judgment of the district court because of the apparently false testimony of the defendants herein, but we believe the defendants have established the *bona fides* of the transfer assailed, not through their false testimony, but in spite of it. That the Walters land was a gift from the father to the son was sworn to by the mother and the brother, and their testimony was unimpeached. The dates of the several transfers were proved by record evidence. The $800 note given as a part of the consideration for the deed was corroborated by the production of the note. Disinterested witnesses testified as to the acts of ownership exercised by Edward Ritchey. In view of the father's financial circumstances at the time of the transfer, we are convinced that the defendants have successfully overcome the presumption which the law imposes upon them. In *Hill v. Schmuch,* 65 Neb. 173, it is held:

"A conveyance without fraudulent intent, by a solvent man, of lands to his wife or child, is presumed to have been made in consideration of his moral obligation for the support and maintenance of the grantee, and in the absence of evidence of a contrary intent, will be held to have transferred the entire title, both legal and equitable; so that the transaction cannot be successfully assailed by subsequent creditors of the grantor."

In the case at bar, we find that the financial circumstan-

ces of the father, especially at the time the Walters land was transferred to the son, were such that the rule above announced clearly governs. And further, as to the transfer assailed, there is no need of presuming that the consideration rested upon a moral obligation, an actual consideration being established. The judgment of the learned trial court was for the defendants, but this judgment was reversed, *ante,* p. 427. The conclusion there announced seems to be based upon the unreliability of defendant's testimony. As above shown, we cannot agree to the conclusion reached.

We therefore recommend that the former opinion be overruled and the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court is vacated and the judgment of the district court affirmed.

JUDGMENT ACCORDINGLY.