(No. 5870. July 1, 1932.)

FRANK KANTOLA, Respondent, v. WALTER HEN-DRICKSON, Sheriff of Shoshone County, Idaho, and HAROLD MELLERUP, Appellants, and BEDA JOHNSON, WILLIAM JOHNSON (Sometimes Known as WM. JOHANSON) and VERA S. JOHNSON, Defendants.

[12 Pac. (2d) 866.]

Edward H. Berg, for Appellants.

Chas. E. Horning, for Respondent.

LEEPER, J.—In 1922 William and Beda Johnson, husband and wife, acquired a house and lot in the village of Mullan, which is the property in controversy in this action. On February 10, 1930, one Harold Mellerup commenced action against them on a promissory note in the circuit court of Multnomah county, Oregon, and on the thirty-first day of January, 1931, obtained judgment in the total sum of $2,104.35. On March 8, 1931, Mellerup filed suit in Shoshone county against William and Beda Johnson upon his Oregon judgment and attached this property. On the twenty-second day of April, 1930, the Johnsons deeded the aforesaid property to their minor daughter, Vera, by warranty deed, which was recorded on the following day.

The Johnsons, with their daughter Vera, had left Mullan in the year 1928, leaving this plaintiff in charge of their property, he thereafter tending to the renting of it. He continued in this capacity until May 1, 1931, and collected rents to the total amount of $570, all of which he remitted to Johnson, except $80 thereof retained to pay interest due him from Johnson on another loan. It appears that during that time Kantola made certain payments for taxes, insurance, etc., and rendered certain labor on Johnson's behalf aggregating $276.78, for which he was never paid.

On May 23d, upon motion of attorney for defendants, William and Beda Johnson, and without notice, an *ex parte* order was entered by the district judge, dismissing the action theretofore instituted by Mellerup in Shoshone county and dismissing the attachment issued therein, upon the sole ground that the complaint was not signed by a resident attorney or the plaintiff. The fact is that the complaint was verified by the plaintiff, but was signed by a nonresident attorney. On the same day Vera Johnson executed a warranty deed to Kantola, which was acknowledged before the same attorney who had represented her parents. Plaintiff testified that he actually bought this property and paid therefor $500 cash, evidenced by a check indorsed by Vera Johnson, the balance of the consideration being the $276.78 owing him from Johnson. On June 5th Kantola obtained a quitclaim deed from William and Beda Johnson.

On July 24, 1931, shortly after learning of the dismissal of his attachment, plaintiff refiled his action and again attached the property, this suit going to judgment on August 19, 1931. Thereafter execution was issued and the property advertised for sale. This action is brought by Kantola to quiet his title and to restrain Mellerup from selling the property. All of the Johnsons have defaulted and judgment was rendered in favor of the plaintiff and against Mellerup and the sheriff. Kantola, Mellerup and Johnson are all related by marriage, they having married

sisters. The defense set up was that the conveyance to Vera Johnson was in fraud of creditors and that Kantola was not an innocent purchaser.

The court found "that no proof has been made of any fraud which would or did render void the title of the said Vera S. Johnson in and to said property, and the court finds that no such fraud existed." This finding is attacked for insufficiency of the evidence, which is substantially undisputed. We believe the assignment is well taken. The evidence discloses that at the time the deed was executed Vera Johnson was a minor daughter and a member of the household of William and Beda Johnson, that Mellerup had instituted suit against the grantors shortly prior to the execution of the deed, that no ostensible change of possession of the premises was made and that Kantola continued to collect the rent and remit it to the Johnsons after the execution of the deed without any notice thereof. It is true that plaintiff could not produce direct evidence as to the exact dealings between Vera Johnson and her parents and to negative consideration, but the foregoing is amply sufficient to make out a *prima facie* case of fraudulent transfer under C. S., sec. 5435, which would stand until rebutted.

While the evidence is not direct there is sufficient in the record to indicate that at the time of the deed to Vera Johnson the grantors were insolvent. Mellerup had brought suit for some two thousand dollars which he had been unable to collect from them. There is also some rather indefinite evidence in the record to the effect that the Johnsons were adjudged bankrupt some time later. Under such circumstances the grantee (or, as in this case, her successor with notice) must assume the burden of showing good faith in the transaction, in accordance with the principle announced in *Moody v. Beggs*, 33 Ida. 535, 196 Pac. 306: "In cases of this character where the relations are so close and confidential as those between husband and wife, the wife who asserts a claim such as is asserted by respondent in this case must assume the burden of showing a transaction that

will bear the most searching inquiry." The rule is sustained in other jurisdictions. (*Chalupa v. Preston,* 65 Colo. 400, 177 Pac. 965; *Seeley v. Ritchey,* 76 Neb. 427, 107 N. W. 769, 110 N. W. 1105; *Plummer v. Rummel,* 26 Neb. 142, 42 N. W. 336; *Coffey v. Scott,* 66 Or. 465, 135 Pac. 88; *Goodale v. Wheeler,* 41 Or. 190, 68 Pac. 753; *Robson v. Hamilton,* 41 Or. 239, 69 Pac. 651.)

While there is a suggestion in the record that the Johnsons at some time owned other property, there is absolutely no evidence that at the time the deed was executed the grantors had retained property adequate in value to pay their debts or had made provision otherwise therefor, thus differentiating this case from *Snell v. Prescott,* 48 Ida. 783, 285 Pac. 483, and *McMillan v. McMillan,* 42 Ida. 270, 245 Pac. 98. Evidence as to what if any consideration was actually paid was entirely within the control of the parties to the transaction (*Stubling v. Wilson,* 50 Or. 282, 90 Pac. 1011, 92 Pac. 810), and the burden of showing this true consideration must be sustained by the grantee or those holding under her with notice if the *prima facie* case of fraud is to be rebutted. "From these facts the inference is necessarily drawn that by such conveyance there was an intent to defraud and hinder the creditors of Beggs. But this inference is not conclusive, for the reason that under our statute the question of intent is one of fact and not one of law. To overcome such inference the evidence must show facts from which the conclusion could be drawn that the grantor had reason to believe that he had made ample provision to pay his debts." (*Moody v. Beggs, supra.*)

The undisputed *prima facie* showing is insufficient to sustain the finding.

The next finding attacked is to the effect that plaintiff was an innocent purchaser for value without notice from the fraudulent grantee, Vera Johnson. The evidence shows that plaintiff gave Vera Johnson a check in the sum of $500 in payment for the property, and charged in as a part of the purchase price an account due him from William Johnson in the sum of $276.78. The plaintiff made

out a *prima facie* case of payment in an amount not grossly inadequate, although apparently less than the actual value. The ultimate disposition of the $500 was not testified to, nor was Vera Johnson made available as a witness. It is to be noted, however, that $276.78 of this consideration was a debt owing from William Johnson, the satisfaction of which would apparently not redound to the benefit of Vera Johnson.

The decision on this point hinges upon the question as to whether or not Kantola was an innocent purchaser. If he was an innocent purchaser for value his title will be protected, as he would then take the estate discharged of the fraud that previously infected it. (12 R. C. L. 607, sec. 118.) On the contrary, actual notice or knowledge of any fact which would put a purchaser from a fraudulent grantee on inquiry as to the intent to defraud creditors will deprive him of his position as a *bona fide* purchaser, and he will be affected by the fraud as to every act done to perfect title after notice of such fraud. A purchaser from a fraudulent grantee who takes with notice of the fraud acquires the title subject to all the infirmities with which it was affected in the hands of such fraudulent grantee. (12 R. C. L. 608, sec. 118.)

Therefore, even though he paid value, his title is no stronger than that of his grantee, if he had notice, actual or imputed, of the fraud. The general rule as stated in 27 C. J. 695, sec. 524, is:

"A purchaser or other transferee not a *bona fide* purchaser for value without notice from a fraudulent grantee acquires no better right or title as to defrauded creditors of the original grantor than that held by the fraudulent grantee; and such purchaser will hold the property subject to all the remedies that could be enforced against it in the hands of his vendor. The fact that he has paid full value for the property does not affect the operation of the rule. Such a purchaser may be compelled to account to the original grantor's creditors for rents and profits

received by him, where the creditors have no other resource for the collection of their claims."

Directing our inquiry to the record to discern whether or not the plaintiff is an innocent purchaser, we find the undisputed facts to be these: He is a relative by marriage to William and Beda Johnson and acted as their confidential agent for a period of three years; he collected rents and remitted them to William Johnson up to May 23, 1931, the date of his alleged acquisition of the property; he had never been advised of the transfer to Vera Johnson until the latter date and never dealt with her as the owner of the property; there was an action pending in Shoshone county in which this very property had been attached at the instance of Mellerup; that action was dismissed without notice on the day of the alleged transfer at the instance of the same attorney who also represented him (Kantola) in the transaction; he knew about the Mellerup judgment, knew that Mellerup was trying to collect the judgment out of this particular property, and the attachment was a matter of public record. Under these circumstances, it cannot be said that the evidence sustains the finding that Kantola was an innocent purchaser. He confessed to actual knowledge of the claim of fraudulent transfer made by Mellerup. Certainly, this situation falls well within the rule announced in 27 C. J. 696, sec. 527:

"While actual notice of the fraud makes one a purchaser *mala fides,* yet, except in a limited number of decisions, it has been held unnecessary that he should have actual notice or positive and legal proof of the fraud; but it is sufficient if he has constructive notice, as where he has knowledge of circumstances such as would put a prudent man upon inquiry and if prosecuted diligently would expose the fraud, where he purchases with notice of a judgment lien in favor of a creditor against his grantor, where he purchases after an execution sale of the property, where he purchases with notice that proceedings are pending to set aside the former conveyance as fraudulent and to subject the property to a judgment against the original grantor, where the convey-

ance to the fraudulent grantee is clearly fraudulent on its face, or where he has notice that another claims a right to recover the property on the ground that it was conveyed in fraud of creditors.''

Suggestion is made by respondent that the judgment obtained by Mellerup is a nullity, because taken after the defendants Johnson had been adjudicated bankrupt. As we have stated, there is no proof as to when this adjudication took place, if at all, nor is there any proof of discharge. In any event, the position is not tenable. ''The filing of a petition in bankruptcy does not prevent the commencement of an action against the bankrupt, although it is subject to be stayed.'' (*Chase v. Farmers' & Merchants' National Bank*, 202 Fed. 904; *Chase v. National Bank of Commerce*, 202 Fed. 906; *In re Camelo*, 195 Fed. 632.) A discharge in bankruptcy is a defense which may be asserted or waived by a bankrupt, and in this case the defense was waived by default.

The judgment is not void, but is upon its face valid, and apparently was so considered by plaintiff in his pleadings. If it should develop that William and Beda Johnson, or either of them, were in fact adjudicated bankrupts, then certain questions will arise between the bankrupt estate and Mellerup as to the title to this property which we cannot pass upon here. That is a matter for adjudication between them, which does not in anywise affect the position of this plaintiff as a fraudulent grantee, who must recover on the strength of his own title.

The judgment is reversed, with instructions to the trial court to enter judgment denying the plaintiff relief, canceling the warranty deed executed by William Johnson and Beda Johnson to Vera Johnson, the quitclaim deed executed by the same parties to this plaintiff, and the warranty deed from Vera Johnson to this plaintiff, and discharging the temporary restraining order heretofore issued against defendant Walter Hendrickson. Costs are awarded to appellants.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.