(No. 6236.   March 23, 1936.)

BUHL STATE BANK, a Corporation, Respondent, v. W. WALLACE GLANDER and ARTHUR E. GLANDER, Appellants, and JOHN H. GLANDER and MARY ELLA GLANDER, Husband and Wife, Defendants.

[56 Pac. (2d) 757.]

544

J. W. Porter and E. L. Rayborn, for Appellants.

James R. Bothwell and Harry Povey, for Respondent.

GIVENS, C. J.—November 12, 1929, John H. Glander gave respondent a chattel mortgage on certain sheep and hay to secure a $10,000 promissory note, and on the same day he and his wife, Mary Ella Glander, gave respondent a real estate mortgage covering 40 acres of land (not the real estate involved herein) and certain water stock, appurtenant thereto, to secure a promissory note of $8,000. October 31, 1931, John H. Glander and his wife transferred 160 acres of land subject to a mortgage thereon for $10,000 given July, 1930, to C. M. Merrick, to their son Arthur E. Glander, and likewise on October 31, 1931, transferred 120 acres of land to their son W. Wallace Glander. April 15, 1932, respondent foreclosed its real estate mortgage, and after the execution sale a deficiency judgment of $4,992.05 was entered May 14, 1932. On the 15th of April, 1932, respondent secured a judgment foreclosing its chattel mortgage, and after the sale of the property covered thereby, docketed, April 21, 1932, a $2,193.54 deficiency judgment. To realize on the deficiency judgment arising from foreclosure of the chattel mortgage, execution was issued July 5, 1932, and returned by the sheriff wholly unsatisfied July 22d, whereupon, November 27, 1933, this action was commenced to set aside the conveyances by John H. Glander and his wife to appellants, as in fraud of creditors, under I. C. A., sec. 54–906, resulting in a judgment in favor of respondent, holding void and

of no force and effect the two deeds above referred to, and canceling and setting them aside, ordering and directing appropriate entries in the recorder's office showing the cancellation and setting aside of said deeds.

In plaintiff's case in chief, Julius H. Schlake and Herman F. DuJardin, and J. H. Barker related conversations with John H. Glander as to his purpose and intent in making the transfers, for the purpose of negativing the validity of the transfers. Objection was made and overruled that these conversations had after the transfers were not binding upon appellants, because it was not shown they knew of or participated in any fraud. The rule with regard to such statements laid down in *Meyer v. Munro,* 9 Ida. 46, 71 Pac. 969, an action involving an issue similar to the one herein, supported by subsequent decisions in other jurisdictions, is that:

"Statements and declarations of the mortgagor (grantor) made after the execution of the mortgage could not invalidate the mortgage unless the mortgagee were shown to be a party to or cognizant of the fraudulent acts or purposes of the mortgagor. . . . . "

64 A. L. R. 798; 83 A. L. R. 1478. As indicated hereafter the evidence supports the finding that the grantees participated in the fraud and appellant cites no authority holding that the admission of incompetent evidence in a trial to the court without a jury, if there be sufficient evidence outside of such incompetent testimony to make a *prima facie* case, is grounds for a nonsuit, and it is not a ground for nonsuit. enumerated in the statute, I. C. A., sec. 7-705.

Appellants further urge in support of their motion for nonsuit two propositions of law; first, where there is an alleged fraudulent transfer, knowledge and participation of the vendee must be shown to render the transfer void. No consideration was shown in plaintiff's case in chief except that recited in the deeds, namely, $1,000 and other valuable consideration in the deed to Arthur E. Glander, and $3,000 and other valuable consideration in the deed to W. Wallace Glander. On the other hand there was testimony, uncontradicted, that the two pieces of land were unincumbered except for the mortgage on one of $10,000 to Merrick,

and that they were worth $150 per acre or a total of $42,000, and so found by the trial court. Eliminating the $10,000 mortgage, and deducting the $4,000 recited consideration, leaves an over-evaluation in the transfer of $28,000. The authorities cited by appellants in support of the above proposition do not go to the extent of requiring participation in the fraud by the vendee where there is such an inadequacy of consideration, as a condition precedent for setting aside the transfer.[1] A conveyance from parent to child for a consideration which is grossly inadequate and attended by other circumstances indicative of fraud will be set aside. (See 27 C. J. 569, sec. 282, note 62.)

The question then to be determined is whether respondent made a *prima facie* case showing that the grantors after the transfers in question did not own or retain sufficient property to pay their debts to respondent. While the execution which was returned unsatisfied issued on only one judgment, if returned unsatisfied as to one, there is nothing in the record to show that it could have been satisfied as to the other; therefore this unsatisfied execution stands with all the reasonable implications to be drawn therefrom, and the rule with regard to giving retroactive effect thereto is thus stated in *Beacon Trust Co. v. Wright,* 288 Mass. 1, 192 N. E. 70, at 72:

"'Sometimes it has been said that 'presumptions' in the less technical sense of permissible though not compulsory inferences of fact, 'do not run backwards' . . . . However expressive that statement may be of a carefully restricted use of inference when it is contended that a state of affairs proved to exist at a later time probably existed at an earlier time, taken literally it is not a rule of law. Everyday experience in trials shows that proof of comparatively fixed conditions existing at the time of a past event is commonly made by means of measurements, photographs and views taken afterwards. . . . The admissibility and sufficiency of evi-

1 *Kerns v. Washington Water Power Co.,* 24 Ida. 525, 135 Pac. 70; *Craig v. Partridge,* 48 Ida. 471, 282 Pac. 940; 20 Cyc. 465; *Calvert v. Alvey,* 152 N. C. 610, 68 S. E. 153, 136 Am. St. 847; *Leavengood v. McGee,* 50 Or. 233, 91 Pac. 453; *Frauenthal & Schwarz v. Bank of El Paso,* 170 Ark. 322, 280 S. W. 1001, 44 A. L. R. 871, and notes.

dence of insolvency on August 5, 1925, to prove insolvency on May 13, 1925, cannot be determined by any formula. The answer depends upon rational probabilities in the light of human experience. Nothing in the record suggests any change in financial status after the earlier date. On that date Lyon Carpet Company had failed to pay the plaintiff's note, to which no possible defense has been suggested. Coupled with these facts, we think the evidence was admissible, and sufficient to warrant the finding of insolvency on May 13, 1925. *Dumangue v. Daniels,* 154 Mass. 483, 28 N. E. 900; *West v. Rice,* 9 Metc. 564, 565, 569; *Sweetser v. Bates,* 117 Mass. 466."

and see *Campbell v. Campbell,* 129 Iowa, 317, 105 N. W. 583; *Strong v. Lawrence,* 58 Iowa, 55, 12 N. W. 74; *Carlisle v. Rich,* 8 N. H. 44; *Dumangue v. Daniels,* 154 Mass. 483, 28 N. E. 900; *Commercial Sav. Bank of Marion v. Balderston,* (Iowa) 260 N. W. 728; *Woolridge v. Boardman,* 115 Cal. 74, 46 Pac. 868. And it is evidence to be considered. (*Fuller v. Brown,* 76 Hun, 557, 28 N. Y. Supp. 189; *Oliver v. Lewis,* 149 Ga. 763, 102 S. E. 146, and cases there cited.)

Herein the record does not show that there was any material change in the financial condition of grantors, between the time of the conveyances and the time of the return of this execution unsatisfied, other than said asserted fraudulent transfers and the disposition of the personal property hereinafter detailed.

Under I. C. A., sec. 31–913, the husband is managing head of the community property and the testimony of John H. Glander would constitute a *prima facie* statement of the grantors' financial condition, there being nothing in plaintiff's case in chief to show the property or any part thereof belonged separately to Mrs. Glander, and under the well-known rule as to nonsuit, the evidence most favorable to plaintiff is to be considered, and all reasonable inferences are to be indulged in favor of the court's action in denying the motion for nonsuit.

John H. Glander testified in chief as a witness for plaintiff, that before he deeded the land to his boys, October 31, 1931, "he didn't have hardly any property, two horses, two cows, and the horses and one cow died"; that his boys owned

the other livestock, and he did not have any to transfer. He then upon further direct and cross examination testified that he had 200 bags of beans worth $.90 a bag, or $180; that he had 8,500 sacks of potatoes which he sold for $165, which sum had to cover the cost of raising and hauling the potatoes, that he had been offered $.25 or $.30 a bushel more, but could not sell because of an injunction issued in connection with the present action; he further testified that he had 400 or 500 bags of beans in connection with previous crops and that he was offered $1.65 per bag but sold for $.90 per bag; that he had $500 or $600 worth of clover seed; and reverting to the 8,500 bags of potatoes that he had been offered $.65 per 100 pounds; that he had 200 or 300 tons of hay worth $5 or $6 per ton, but his operating expenses absorbed all of that; that he owned a mortgage note of $2,000 signed by J. L. Smith, on 160 acres of land one mile west of witnesses' place; this $2,000 note was given in 1925, renewed and interest paid 1930; that there was a first mortgage on this land of $9,000; that he had a $500 note signed by George W. Clark, secured by land on Three Creek, north of Flat Creek, in Owyhee County; that interest was paid to September 13, or November 1, 1930, the testimony being confusing whether there was a payment of principal, if so how much, or if this was interest; no principal was paid on the $2,000 note and neither note had been paid at the time of trial, which was April 21, 1934, but that he considered these notes to be good. He also testified he had 2,000 bushels of wheat worth $.60 per bushel; 1,200 bushels of barley, worth $.90 per 100; he had an interest in mining property in Boise County, for which he had paid $2,000; that at the time of the transfers he had $60,000 in life insurance; that the price or value of sheep had declined from October 31, 1931, to the time they were sold under the foreclosure of the chattel mortgage, probably $1.25 per head; that he sold 500 bushels of wheat to pay bills, but paid the bank nothing; that he received $300 for the barley, and had received $2,250 on his $4,000 life insurance policy out of which he paid Merrick $700 interest; he had a $50,000 short term, 14 year pay policy in the Equitable Co., which was cancelled for failure to pay the premiums, receiving $187 for it, but thought in 1931 it had a cash value

of $250 or $300. There was introduced in evidence a copy of a complaint filed by John H. Glander and his wife against respondent for damages for alleged interference by injunction with their disposal of personal property, wherein it was alleged they had suffered losses as follows:

"Loss on said 6500 sacks of potatoes in the sum of $1625.00; loss on said 1500 bushels of wheat in the sum of $180.00; loss on said 575 bags of white beans in the sum of $287.50; and loss on said 1200 bushels of barley in the sum of $115.20; making a total loss of $2207.70."

and with loss of time and attorney's fees to a total of $2,482.70.

Comparing what was received for the items above enumerated and the values placed upon them by the grantor, we have the following possible assets:

| | WHAT GLANDER CLAIMED IT WAS WORTH. | | WHAT GLANDER ACTUALLY RECEIVED. | |
|---|---|---|---|---|
| Items. | Highest Value. | Lowest. | Highest. | Lowest. |
| Beans | $ 180. | $ 180. | $ 180. | $180. |
| Potatoes | 4,249.80 | 3,706.50 | 165. | 000. |
| Clover seed | 600. | 500. | 600. | 000. |
| Beans | 825. | 660. | 450. | 360. |
| Hay | 1,800. | 1,000. | 1,800. | 000. |
| Note (Smith) | 2,000. | 2,000. | 2,000. | 000. |
| Note (Clark) | 500. | 500. | 500. | 000. |
| Wheat | 1,200. | 1,200. | 1,200. | 900. |
| Barley | 1,080. | 800. | 300. | 300. |
| Mining Interest | 2,000. | 2,000. | 2,000. | 000. |
| Life Insurance | 300. | 250. | 187. | 187. |
| | $14,734.80 | $12,796.50 | $9,382. | $1,927. |

No evidence was introduced as to the value of the $2,000 and $500 notes and mortgages, and we cannot say that the trial court might not have legitimately concluded because they were long past due and one was a second mortgage and one was on unimproved land that their value was *nil*, which he evidently did. Thus the lowest figure that the court might have concluded that, outside of the real estate, the property the grantors owned was $1,927. The total of the two deficiency judgments amounted to $7,185.59. The

transfers were from father and mother to sons, and the general rule is that such a transfer is subject to close scrutiny. (*Moody v. Beggs,* 33 Ida. 535, 196 Pac. 306 (as to husband and wife); 27 C. J. 639, sec. 404, note 20; 27 C. J. 642, sec. 407, note 51; 27 C. J. 646, sec. 413, note 15.) *McMillan v. McMillan,* 42 Ida. 270, 245 Pac. 98, merely holds that a transfer from husband to wife without consideration is not *prima facie* fraudulent, and the fact that the property subsequently sold results in a deficiency judgment, if the husband retains sufficient money to pay his debts does not constitute a fraudulent transfer, and did not attempt to lay down a rule of evidence nor how the testimony with regard to inadequacy of consideration or insolvency is to be weighed, and the latest expression of this court in *Kantola v. Hendrickson,* 52 Ida. 217, 12 Pac. (2d) 866, sufficiently distinguishes *Snell v. Prescott,* 48 Ida. 783, 285 Pac. 483, and *McMillan v. McMillan, supra,* on this point, reaffirming the statement in *Moody v. Beggs, supra.* We cannot therefore say that the court erred in refusing to grant the motion for nonsuit. (*Kantola v. Hendrickson, supra; Moody v. Beggs, supra; California etc. Min. Co. v. Manley,* 10 Ida. 786, 81 Pac. 50; *Sears v. Lydon,* 5 Ida. 358, 49 Pac. 122.)

Viewing the entire case the testimony shows that the parents and sons lived on the two places in question, and apparently farmed them as a joint enterprise. In support of appellants' position that the transfers were for a valuable consideration they offered testimony that Mrs. Glander had received, by way of inheritance, $400 from her grandfather in 1909, and $4,242 from her father's estate in 1924, and that this money went into the purchase of the real estate involved. This cannot avail appellants for two reasons: first, because the proof that the husband and wife considered her participation in or contribution to the purchase of the land resulted in a debt to be repaid her by him or from the community does not sustain the burden required in such a situation (*Moody v. Beggs, supra,* at page 550 of the Idaho Reports), and second, Mrs. Glander at all times knew that the land stood in the name of her husband and never objected, that he borrowed money from the bank and yet she never asserted any such indebtedness, and is

therefore estopped to assert her claim at this time. (*Chaney v. Gauld Co.*, 28 Ida. 76, 152 Pac. 468.)

Appellants introduced evidence to the effect that the two sons were to receive wages in varying amounts and this constituted part consideration for the transfers, contending that where a transfer is for a valuable consideration and the grantees are innocent of and do not participate in the fraud of the grantor such grantees are entitled to protection to the extent of the consideration given by them, and these propositions are supported by the authorities in the note in 79 A. L. R. 132. On the other hand, if either condition is lacking the grantee will be accorded no relief. The court found specifically that there was no consideration for the transfers and that the appellants knew of their father's indebtedness and received the conveyances with the intent and purpose of defrauding respondent.

While the two appellants and their mother testified as to the wages appellants were to receive and the income derived by one of the boys by raising bum lambs, no definite amount for a full year's work or for the entire period between their majority and the transfers was stated, and on cross-examination could name no one else who had received $60 per month.

As to appellants' knowledge or participation the evidence may be briefly summed as follows: Wallace testified he knew before the deeds were given that his father owed money to the bank; he knew his father had to borrow some money for the sheep, and that Mr. Barker was on the farm to look at the sheep, crops and stock, in connection with a financial statement; Wallace loaned his father $250 on a mortgage on his car in 1930, but let his father use the car to get around in; Mrs. Glander did not know of any money passing as consideration for the transfer to Wallace; Arthur knew his father owed the bank, that he had a mortgage on the sheep, saw Mr. Barker looking them over; the sheep and the forty is all Arthur thought his father had; when asked about the consideration for the transfer to him, he first said it was "by raising bum lambs," then he stated, "I would work it out on the place, help pay for the place," when asked again what he understood about the $1,000 consideration he said: "Well, I guess that deed there—I don't hardly understand it." He knew there was a mortgage on the property he was to get.

When John H. Glander was asked "When was the first time you told Arthur Glander and Wallace Glander about owing this money, and what you used this money for?" he answered, "Well, the first time I came right out and told them was last night when we were talking together"—leaving the impression that he might previously have indirectly told them.

The probability or improbability of appellants being entitled to wages at $50 or $60 per month, less $10 per month, they admitted receiving as spending money, and the $1,000 claimed for raising lambs, which would have amounted to between $3,500 and $6,500 dependent upon the wage rate used, was for the trial court and we cannot say that the evidence is in such a condition as to not sustain his findings that there was no consideration and that they participated in the fraudulent transfers. And since such participation was shown the testimony of Schlake, Dujardin and Barker was admissible.

The judgment is affirmed except that it should provide that the deeds are set aside only as to respondent and subjected as against appellants only to the satisfaction of its deficiency judgments against John H. and Mary Ella Glander. Costs to respondent.

Budge, Morgan, Holden and Ailshie, JJ., concur.