346 P.2d 1047

Stella **LIVINGSTON**, Plaintiff and Respondent,

v.

Fred **PARISH**, Administrator of the Estate of Ena Livingston Parish, deceased, Defendant and Appellant.

No. 8673.

Supreme Court of Idaho.

Nov. 23, 1959.

474

William P. Hemminger, Rigby, Albaugh, Bloem & Smith, Idaho Falls, for appellant.

Lee & Bates, Rigby, for respondent.

KNUDSON, Justice.

The allegations of respondent's complaint are that on or about October 29, 1951, respondent loaned to Rulon Livingston (son of respondent) and, or, Ena Livingston (wife of Rulon Livingston) the sum of $3,000 cash which they promised to repay without interest on December 1, 1952; that on or about April 8, 1952, respondent loaned the same parties an additional $800 which they promised to repay, without interest, on December 1, 1952; that the appellant is the qualified administrator of the estate of Ena Livingston Parish, who died intestate on May 29, 1956. It is further alleged that a claim for the payment of said sums was rejected by appellant on the 22nd day of December, 1956. The complaint prays for a judgment against appellant in the sum of $3,800, together with interest from December 1, 1953 and costs of suit.

The evidence submitted discloses that the $3,000 loan was made to Rulon Livingston and his then wife Ena, and used for the purchase of real estate and the $800 loan was made and used for the purchase, by said borrowers, of farm machinery and livestock. There is no written evidence of either loan. Rulon Livingston died intestate on November 2, 1952. During the course of the probate of his estate respondent filed a creditor's claim against the estate seeking to recover the sum of $3,800. Said claim was rejected and no action or other proceeding was filed in connection with such rejected claim. On January 12, 1955, Ena Livingston married Fred Parish. Ena Livingston Parish died May 29, 1956. This action was commenced March 14, 1957, tried to a jury and in conformity with the verdict a judgment was entered in favor of respondent. This appeal is from such judgment.

**476**

Appellant's first assignment of error is directed to the trial court's refusal to grant appellant's motion for a nonsuit. During our consideration of this assignment it is our duty to consider the evidence introduced by respondent in the light most favorable to respondent and all reasonable inferences are to be indulged in favor of the trial court's order in denying the motion (Buhl State Bank v. Glander, 56 Idaho 543, 56 P.2d 757). The evidence tending to establish respondent's contention that the obligation to repay the loan was originally the debt of Ena Livingston is meager. In addition to the evidence that Ena Livingston was present during negotiations between her husband and the parties from whom the property was purchased, the following is the only evidence referred to by respondent as tending to prove that Ena Livingston personally obligated herself to repay the loan. It is the testimony of C. L. Jones, an abstractor, relating to a conversation which took place in his office on October 29, 1951, at which time Rulon Livingston, Ena Livingston (also referred to as Mickey) and respondent were present, to-wit:

"Q. All right; and then was there any further conversation? A. Yes. * * * they then decided that they's go ahead with the deal, and Rulon told me that they had $3000 of their own, and with Mickey and Mrs. Livingston there, why, they had agreed between themselves that Mrs. Livingston would furnish Rulon and Mickey with the balance of the $3000. That was the understanding that they put out in the office, and Rulon says—

"Q. (interrupting) What did they say about that? Did you have any further conversation then? A. At the time that they were talking about the money, why, I asked Rulon if they were going to have a note or a mortgage and note to secure his mother on the money, and he says, 'We have discussed the matter and inasmuch as she is going to charge us no interest, why, we will have no papers signed showing the indebtedness, and either myself or Mickey, or both of us will pay Mrs. Livingston this money back by December of the coming year.'

"Q. Was that December of 1951? A. December of 1951 was the December of the year in which the transaction was made, and as I understood, the money was to be paid back by the December of the coming year.

"Q. Did they say any particular date in December? A. No, sir, I don't believe that they mentioned a particular date."

On cross-examination the same witness testified as follows:

"Q. Now, did Ena Livingston have anything to say at that time? A.

Just in the regular conversation period she said a few words off and on, that they were purchasing the property.

"Q. She was with them, you said? A. Yes, sir. As usual, the man done most of the talking.

"Q. Did she say anything about paying the money back, or was that Rulon that said that? A. Rulon said that either 'myself or Mickey, or both of us will.'

"Q. Pay it back? A. Pay the money back. She was there at the time he said it.

"Q. But you don't remember whether Ena said anything or not? A. No, I don't on that particular matter. I wouldn't remember, no, sir."

There is no allegation in respondent's complaint that the borrowing of the money, or any purchase made with it, was for the use and benefit of Ena Livingston's separate estate or in connection with the control or management thereof or in carrying on or conducting business therewith. At the time the motion for nonsuit was made the uncontradicted evidence introduced on behalf of respondent was sufficient to establish that Ena Livingston was present during negotiations incident to borrowing the money involved; that the money was borrowed for the purposes claimed by the respondent, i. e., $3,000 for the purchase of farm real estate and $800 for the purchase of farm machinery and livestock. There is no evidence whatever to the effect that during such negotiations and purchases Ena Livingston made any promise, representation or statement that could be construed as obligating herself individually to repay either of such loans. In order to justify a denial of the motion it would have been necessary for the trial court to determine as a matter of law that the evidence introduced was sufficient to support a finding that on the occasion as testified to by the witness C. L. Jones (hereinbefore referred to) Rulon Livingston was in fact clothed with authority as agent to deal with and obligate his wife's separate property and that her failure to repudiate the statement there made by her husband had the effect of creating a personal obligation on her part to repay the loans from her separate estate. It is clear that the evidence would not support such a finding or conclusion of law. In the case of Loomis v. Gray, 60 Idaho 193, 90 P.2d 529, 536, this Court considered the effect of a wife's failure to protest against or repudiate acts of her husband in connection with borrowing money which was not used for the benefit of her separate estate. In deciding that a wife need not openly repudiate acts of her husband in order to protect her separate property from liability for her husband's unauthorized acts, this Court said:

"Consequently, to require a wife to openly repudiate the acts of her husband in order to protect her property from liability for his unauthorized acts would make it necessary for the wife whenever her husband requested her to sign a paper, or for instance, type a letter, to closely interrogate him about the matter, and if still in doubt, to obtain legal advice. Such constant questioning would, no doubt, lead to misunderstandings, suspicion and turmoil, and thus largely destroy the peace and tranquility of the home which sound public policy would preserve."

Accordingly in the instant case Ena Livingston's failure to deny or make any comment concerning her husband's statement that "either myself or Mickey, or both of us will pay the money back" would not constitute an acquiescence in or ratification of the act of her husband with the effect of obligating her separate estate to the payment of the debt involved.

There is no evidence that respondent in making the loans relied to any extent upon her daughter-in-law's ability to repay the loans from her separate estate or that respondent even knew that any such separate estate existed. Even though it be assumed that Ena Livingston, at the time the money was borrowed, was possessed of a separate estate, there is no evidence that she said or did anything which would lead respondent to believe that her husband Rulon was authorized to act as her agent in the management or control of her separate property. Nor is there any evidence from which it could be reasonably concluded that he was so authorized to act. There is no evidence of deception in the conduct or declarations of Ena Livingston or that respondent was in any respect deceived by her.

■ The obligation to repay the loan here involved was clearly a community debt. The property when purchased became their community property and remained such until the community was terminated and dissolved by the death of Mr. Livingston. The court having jurisdiction of Rulon Livingston's estate expressly found that all property in which such decedent had any interest was community property belonging to the deceased and his surviving widow Ena and decreed succession thereto accordingly by vesting the title in the surviving widow "as her sole and separate property". A wife's interest in community business cannot have the effect of subjecting her to personal judgment and binding or obligating her separate property. Pacific Acceptance Corporation v. Myers, 49 Idaho 585, 290 P. 404.

In the case of Tipton v. Ellsworth, 18 Idaho 207, 109 P. 134, which is cited by respondent as supporting her contention, the wife expressly contracted with reference to her separate property. She knowingly and voluntarily mortgaged such of

her separate estate as was involved in that case. No such facts exist in the instant case.

▇▇▇ Respondent's complaint does not allege that the debt here involved was incurred for Ena Livingston's use and benefit or in reference with the management and control or for the use and benefit of her separate property. This Court has repeatedly held that in order to charge the separate property of a married woman or render it liable to levy and sale for an indebtedness contracted by her such allegations must be contained in the complaint and proven in the trial. Ness v. Coffer, 42 Idaho 78, 244 P. 145; Dernham v. Rowley, 4 Idaho 753, 44 P. 643; Thomas v. Young, 42 Idaho 240, 245 P. 75; Holt v. Gridley, 7 Idaho 416, 63 P. 188. However since the sufficiency of the complaint was not challenged we do not here consider its deficiency in deciding this case. The controlling factor is the failure of proof necessary to establish liability on the part of Ena Livingston or her estate. The decisions of this Court relating to the liability of a married woman for a debt are numerous and uniform. One of the early and leading cases announcing the law applicable is Bank of Commerce v. Baldwin, 12 Idaho 202, 85 P. 497, where it is held that:

"A married woman cannot bind herself personally for the payment of a

debt that was not contracted for her own use, or for the use or benefit of her separate estate, or in connection with the control and management thereof, or in carrying on or conducting business therewith."

In Ness v. Coffer, supra, this Court stated:

"* * * the common-law disability of a married woman to enter into contracts, to sue or be sued, has not been removed, otherwise than as stated in the exceptions, and that in order to charge the separate property of a married woman, or render it liable to levy and sale for an indebtedness contracted by her, it must be alleged in the complaint and proven at the trial that the debt was incurred for her own use and benefit or in reference to the management and control or for the use and benefit of her separate property." [42 Idaho 78, 244 P. 147.]

In Loomis v. Gray, supra, the rule is restated as follows:

"It will be observed that no matter how or in what form the question has arisen, this court has adhered to the rule first announced at the turn of the century in the Baldwin case, that 'a married woman cannot bind herself personally for the payment of a debt that was not contracted for her own

**480**

use, or for the use or benefit of her separate estate, or in connection with the control and management thereof or in carrying on or conducting business therewith' ". [60 Idaho 193, 90 P.2d 535.]

Since by this action it is sought to bind a married woman personally for the payment of a debt not contracted for her use and benefit or in connection with her separate estate the rules announced in the foregoing cited cases are applicable and must be followed.

█ The record is barren of proof that the obligation to repay the debt here involved was incurred for Ena Livingston's own use and benefit or in reference to the management and control or for the use and benefit of her separate estate. Since such proof is essential and lacking the respondent did not establish a prima facie case and the motion for nonsuit should have been granted. Having reached this conclusion it is unnecessary to pass upon the other assignments of error. It follows that the judgment is hereby reversed with direction to the District Court to dismiss the action. Costs to appellant.

PORTER, C. J., and TAYLOR, SMITH and McQUADE, JJ., concur.