VIRGINIA CORPORATION *v.* C. CHANDRA GALANIS ET AL.
(14474)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued April 29—decision released August 11, 1992

*Edwin L. Doernberger,* with whom was *M. Mitchell Morse,* for the appellants (plaintiff and defendant Consolidated Capital Corporation).

*William A. Phillips,* for the appellee (defendant Armstrong Capital, S.A.).

BORDEN, J. The dispositive issues in this appeal are: (1) whether three judgment liens of the defendant Armstrong Capital, S.A. (Armstrong), on a particular piece of property are entitled to priority, in a foreclosure action, over the mortgages of the plaintiff, Virginia Corporation, and one of the defendants, Consolidated Capital Corporation (Consolidated Capital), on that property; and (2) whether moneys expended to maintain property during a mortgage foreclosure proceed-

ing, authorized by the court, are to be given priority over the encumbrances on that property. The plaintiff brought this action to foreclose its mortgage, and appeals jointly with Consolidated Capital from the judgment of the trial court, *Karazin, J.*, affirming the report of an attorney state trial referee that established the priorities of the encumbrances on the property.[1]

The plaintiff and Consolidated Capital claim that the trial referee improperly concluded that: (1) they had notice of a fraudulent conveyance of the property due to a notice filed on the land records by an interim trustee in bankruptcy; (2) the conveyances of the mortgages to them were fraudulent conveyances in which they had participated; (3) Armstrong's claims were not barred by the statute of limitations within which to bring an action to set aside a fraudulent conveyance; and (4) the moneys they had expended, pursuant to court authorization, in order to maintain the property during this foreclosure proceeding were not entitled to priority over the recorded encumbrances on the property. We affirm in part and reverse in part.

The relevant facts are as follows. On January 13, 1977, John Galanis[2] purchased property known as 766 Lake Avenue in Greenwich (the property) in the name of Paisley Farms, Inc. (Paisley Farms). Galanis, who controlled Paisley Farms as its president, had Paisley Farms hold record title to the property in order to shield the property from his creditors. In November, 1978, Paisley Farms, at John Galanis' direction, conveyed the property to his attorney, Dennis Joy, as

---

[1] Other defendants in the foreclosure action were C. Chandra Galanis, Thomas J. Williams, Andover Financial Corporation, the town of Greenwich, United States Internal Revenue Service, R and R Landscaping, Inc., and the Bank of Stamford. They have not appealed from the judgment ordering the priorities in the case.

[2] John Galanis is currently serving a sentence in federal prison for fraud in excess of $100,000,000. He did not testify in the present case and is not a party to this litigation.

trustee. In June, 1979, Armstrong registered in Connecticut three judgments[3] that it had obtained against John Galanis for fraud.

In January, 1980, at Galanis' direction, Dennis Joy, as trustee, conveyed the property to Galanis' wife, C. Chandra Galanis (Chandra Galanis). Simultaneously, Chandra Galanis, at John Galanis' direction, conveyed the property to JPJ Investments, Inc. (JPJ Investments). These conveyances were recorded on April 25, 1980, and were all executed in order to shield the property from creditors of John Galanis. Five days later, on May 1, 1980, Chase Manhattan Bank instituted an involuntary bankruptcy proceeding against John Galanis. On April 13, 1981, the interim trustee in the bankruptcy proceeding recorded a notice in the Greenwich land records claiming an interest in the property on behalf of John Galanis' creditors.[4] In June, 1982, JPJ Investments, at the direction of John Galanis, conveyed the property to Chandra Galanis. John Galanis directed this conveyance in order to use the property as security for loans he planned to obtain.

On March 10, 1983, Chandra Galanis, Thomas Williams and Andover Financial Corporation[5] procured from the plaintiff a loan in the amount of $1,000,000 and executed a promissory note in that amount to the

---

[3] Armstrong obtained these judgments in the United States District Court for the Southern District of New York. The first judgment was obtained in 1976 in the amount of $510,770.84. The second judgment was obtained in 1978 in the amount of $866,739. The third judgment was obtained in 1979 in the amount of $532,022.

[4] The notice provided: "All persons taking any interest in said property after the date of this notice shall take subject to the interests of the Interim Trustee." The bankruptcy proceeding was ultimately dismissed on November 9, 1984.

[5] Thomas Williams was John Galanis' brother-in-law, after Williams married Chandra Galanis' sister. He was a close advisor to John Galanis. Andover Financial Corporation was a corporation controlled by John Galanis.

plaintiff. To secure the note, Chandra Galanis conveyed to the plaintiff a mortgage on the property that was recorded on the same day. On July 30, 1984, Chandra Galanis and Consolidated Mortgage[6] procured from Consolidated Capital a loan in the amount of $1,500,000 and executed a promissory note in that amount to Consolidated Capital. To secure the note, Chandra Galanis conveyed to Consolidated Capital a mortgage on the property that was recorded on August 9, 1984. The property was valued at approximately $3,000,000 when the trial began.[7] It is these mortgages of the plaintiff and Consolidated Capital that the trial court subordinated to the subsequently recorded judgment liens of Armstrong.

After the recordation of the mortgages, Armstrong filed a suit against John and Chandra Galanis seeking collection of its three registered judgments. On March 12, 1986, Armstrong obtained a prejudgment remedy of attachment against John and Chandra Galanis in the total amount of $2,213,000 and recorded the attachment against the property. Armstrong thereafter recorded judgment lien certificates for its three judgments against the property on September 9, 1987. It is these judgment liens, rather than the attachments, to which the trial court gave priority over the mortgages of the plaintiff and Consolidated Capital.

On September 26, 1986, the plaintiff filed the present action to foreclose its mortgage on the property. On July 6, 1987, Armstrong filed its answer and special defenses to the foreclosure action, along with a counterclaim against the plaintiff and a cross complaint against

---

[6] Consolidated Mortgage was also a corporation controlled by John Galanis.

[7] On December 22, 1984, Chandra Galanis, at John Galanis' direction, conveyed the property to Galanis Brothers Trust, naming Chandra Galanis as trustee. This conveyance was executed in order to shelter assets from John Galanis' creditors.

Consolidated Capital. In its special defenses, Armstrong claimed that the plaintiff and Consolidated Capital "knew or should have known that the defendant Chandra Galanis was holding title to the premises as nominee of John Galanis," that they knew John Galanis was involved in fraudulent activity and that they had "conspired with him to disguise his interest in the premises . . . ." Armstrong sought to have the mortgages declared null and void.

On September 21, 1990, after a trial to an attorney state trial referee, *W. James Cousins,* the referee issued a report concluding that Armstrong had proven, by clear and convincing evidence, that the conveyances of the property, directed by John Galanis, were fraudulent conveyances made with the intent to defraud John Galanis' creditors.[8] The referee then noted that "Armstrong, having proven that John Galanis fraudulently conveyed his property to avoid creditors, established its right to enforce its judgments against the property. That right is subject only to the intervening rights of someone who innocently buys or encumbers the property without notice of Armstrong's claim. *Trumbull* v. *Hewitt,* 65 Conn. 60, 31 A. 492 (1894), 37 Am. Jur. 2d, Fraudulent Conveyances § 153. The rights of the buyer or encumbrancer are inferior to those of a creditor, if the buyer or encumbrancer 'knew or ought to have known of the fraudulent transfer, having been informed of facts which suggested an investigation of title . . . .' 37 Am. Jur. 2d, [supra, p. 824]." The referee found that the plaintiff and Consolidated Capital had actual knowledge of the fraudulent transfers through "the extensive and close relationship these lenders had with the fraudulent transferor, John Galanis."

---

[8] We commend the attorney state trial referee for his clear statement of a very complex factual scenario and his thorough and well reasoned analysis of the legal issues raised thereby.

On the basis of these findings, the trial referee assigned Armstrong's three judgment liens a priority position over the mortgages of the plaintiff and Consolidated Capital. On July 2, 1991, the trial court, *Karazin, J.,* rendered judgment in accordance with the trial referee's report and recommendations. The plaintiff and Consolidated Capital appealed to the Appellate Court from that judgment, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

I

The plaintiff's and Consolidated Capital's first claim is that the trial referee improperly found that they had participated with Chandra Galanis in John Galanis' scheme to defraud his creditors when they received their mortgages on the property. They argue that in order to set aside their mortgages, Armstrong was required to prove, by clear and convincing evidence, that the mortgage conveyances had been made with fraudulent intent in which they had participated. They stress that "[i]t must be emphasized that the [clear and convincing evidence] standard of proof must be applied to the conveyances from Chandra Galanis to [the plaintiff] and Consolidated Capital."

Armstrong claims, on the contrary, that since the plaintiff and Consolidated Capital had actual knowledge of the fraudulent conveyance directed by John Galanis to Chandra Galanis, the record owner of the property at the time of the mortgage conveyances, the plaintiff and Consolidated Capital were not bona fide encumbrancers and, therefore, their mortgage encumbrances on the property were subordinate to the claims of Galanis' defrauded creditors. In other words, Armstrong argues that irrespective of the trial referee's finding that the plaintiff and Consolidated Capital participated in John Galanis' fraudulent scheme, the fact

that they had actual knowledge of the fraudulent conveyance to Chandra Galanis that was directed by John Galanis "destroys [their] pretended bona-fides."[9] We agree with Armstrong.

The plaintiff and Consolidated Capital initially claim that Armstrong is barred by the three year statute of limitations within which to bring an action to set aside a fraudulent conveyance. See *Travelers Indemnity Co. v. Rubin,* 209 Conn. 437, 441, 551 A.2d 1220 (1988) (three year tort statute of limitations of General Statutes § 52-577 applies to common law fraudulent conveyance action). The trial referee held that any statute of limitations was tolled due to John Galanis' fraudulent concealment of the various fraudulent conveyances and by the automatic stay during the bankruptcy proceeding. We note, contrary to the assertions of the plaintiff and Consolidated Capital, that the present case is not an action brought by Armstrong to set aside the mortgage conveyances from Chandra Galanis to the plaintiff and Consolidated Capital.[10] This is also not an action brought by Armstrong to set aside the fraudulent conveyance to Chandra Galanis that was directed

---

[9] Armstrong also claims that the evidence supports the trial referee's finding, by the clear and convincing evidence standard, that the plaintiff and Consolidated Capital participated in John Galanis' fraudulent scheme. While the trial referee concluded that the plaintiff and Consolidated Capital participated in John Galanis' scheme to defraud his creditors, we do not need to consider whether that conclusion was proper since the plaintiff's and Consolidated Capital's actual knowledge of John Galanis' fraudulent conveyance to Chandra Galanis disposes of this case.

[10] While Armstrong's special defenses sought to declare the mortgage deeds null and void, the gravamen of the special defenses was to obtain a superior lien position over the mortgages of the plaintiff and Consolidated Capital. Indeed, the trial referee, rather than declare the mortgages void, simply determined that Armstrong's judgment liens had priority over the mortgages. Thus, we conclude that Armstrong was not seeking to set aside the mortgage conveyances as fraudulent.

We recognize that if Armstrong were seeking to set aside the mortgage conveyances as fraudulent, Armstrong would bear "the burden of proving either: (1) that the conveyance was made without substantial considera-

by John Galanis.[11] The present case arises from a foreclosure action brought by the plaintiff in which Armstrong is asserting, as an equitable defense in order to obtain a priority position as an encumbrancer on the property, the fact that the plaintiff and Consolidated Capital are not bona fide encumbrancers. Since the present case does not involve an action to set aside a fraudulent conveyance, but rather an equitable defense asserted by Armstrong as a defendant in a foreclosure action, we conclude that § 52-577 is inapplicable.

The general rule is that a bona fide purchaser or encumbrancer from a fraudulent grantee acquires good title and takes the property discharged of the fraud so that he has priority over the fraudulent grantor's creditors. See *Walp* v. *Mooar,* 76 Conn. 515, 57 A. 277 (1904); *Williamson* v. *Russell,* 39 Conn. 406 (1872); *United States* v. *Fidelity & Deposit Co.,* 214 F.2d 565 (5th Cir. 1954); *First State Bank of Scottsbluff* v. *Bear,* 172 Neb. 504, 110 N.W.2d 83 (1961); 37 Am. Jur. 2d 824, Fraudulent Conveyances § 152. "The rights of a purchaser [or encumbrancer] from a fraudulent transferee are superior to those of the [fraudulent] transferor's creditors only if such purchaser [or encumbrancer] is an innocent purchaser [or encumbrancer] for value. Where it appears that he had knowledge or notice of the fraudulent transfer, he will be held to have acquired the title subject to the rights of the [fraudulent] transferor's creditors. His right is inferior to that of the creditors where it appears that he knew . . . of the fraudulent transfer . . . ." 37 Am. Jur.

---

tion and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. *Bizzoco* v. *Chinitz,* 193 Conn. 304, 312, 476 A.2d 572 (1984); *Zapolsky* v. *Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983)." *Tyers* v. *Coma,* 214 Conn. 8, 11, 570 A.2d 186 (1990).

[11] Indeed, Armstrong's March 12, 1986 action was presumably brought to set aside that conveyance, along with John Galanis' other fraudulent conveyances.

2d 824, supra, § 153; see also *Walp* v. *Mooar,* supra; *Kantola* v. *Hendrickson,* 52 Idaho 217, 12 P.2d 866 (1932).

In the present case, the trial referee first found, and the plaintiff and Consolidated Capital do not dispute, that John Galanis fraudulently conveyed the property[12] to Chandra Galanis in order to shield the property from his creditors, one of which was Armstrong. In making this finding, he concluded, as was necessary; see footnote 9, supra; that Chandra Galanis had participated in the fraud and was, therefore, a fraudulent transferee. Since Chandra Galanis was a fraudulent transferee, the mortgages on the property, as encumbrances acquired from a fraudulent transferee, are superior to the encumbrances of John Galanis' creditors only if the plaintiff and Consolidated Capital did not have notice of the fraudulent transfer.

The trial referee found that "Armstrong proved that [the plaintiff] and Consolidated Capital knew . . . of the fraudulent [transfer] . . . through the extensive and close relationship these lenders had with the fraudulent transferor, John Galanis." This finding will be set aside only if it was clearly erroneous. The finding, however, is not clearly erroneous because there is ample evidence in the record to support it.[13]

---

[12] The trial referee noted that while John Galanis did not actually convey the property, he did direct the conveyance. See *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 429 A.2d 908 (1980) (no inherent difference between debtor conveying his property to another and that of a debtor causing the title to the property purchased to be placed in the name of another where object of transfer is to hinder, delay or defraud creditors).

[13] The trial referee also found that the plaintiff and Consolidated Capital had constructive notice of claims by John Galanis' creditors on the property and, therefore, had notice of the fraudulent conveyance directed by John Galanis to Chandra Galanis at the time the mortgage loans were made. The referee's finding was based on a notice, filed by the interim trustee in the bankruptcy proceeding, of the trustee's claim on that property . See footnote 4, supra. The plaintiff and Consolidated Capital claim that that notice was ineffective to put them on notice of the fraudulent conveyance

The referee found that the plaintiff corporation was owned by Jerome Morris, who operated it as a sole proprietorship. Consolidated Capital was also owned by Morris along with his close friend, Jay Botchman. Botchman was a friend and close confederate of John Galanis. When John Galanis asked Botchman to find him a lender who would take the property as security, Botchman introduced Galanis to Morris. Prior to the mortgage loans, Morris met with Galanis and Thomas Williams, Galanis' brother-in-law, in Greenwich to discuss the bankruptcy and *whether the property was in the estate of John Galanis*. The referee also found that, subsequently, the two mortgage loans at issue were granted to Galanis in order to "buy up claims of the bankruptcy creditors. Botchman assisted Galanis in buying up the creditors' claims." At the time of the mortgage loans, record title to the property was in the name of Chandra Galanis. On the basis of these facts, we conclude that the trial referee's finding that the plaintiff and Consolidated Capital had actual knowledge of the fraudulent conveyance was amply supported by the record. Therefore, the trial referee properly assigned Armstrong's three judgment liens on the property priority over the plaintiff's and Consolidated Capital's mortgages.

## II

The plaintiff next claims that the trial referee improperly refused to allow the plaintiff to recover, with priority over the recorded encumbrances on the property,

---

directed by John Galanis to Chandra Galanis. Since we conclude that the trial referee's finding, that the plaintiff and Consolidated Capital had actual knowledge of the fraudulent conveyance, was supported by the record, we need not consider whether the bankruptcy notice provided sufficient constructive notice to the plaintiff and Consolidated Capital of the fraudulent conveyance.

moneys it had expended to maintain the property during the foreclosure proceeding. We agree.[14]

The following facts are relevant to this issue. On June 8, 1987, after the foreclosure action had been begun, the plaintiff filed a motion for immediate access to the property. In its motion, the plaintiff stated that the property "may be vacant, damaged and uninsured, which situation seriously jeopardizes the security of the plaintiff in the property." The plaintiff requested that it have access to the property in order to maintain the property so as to preserve the security and to obtain insurance on the property. The trial court, *Lewis, J.,* granted the plaintiff's motion.

In his report, the trial referee found that the plaintiff had expended $85,250.91 "for the maintenance and protection of the mortgaged premises . . . ."[15] After the referee filed his report, the plaintiff filed a motion to correct the report to include thirty-nine factual assertions. The third factual assertion provided: "Monies

---

[14] Armstrong maintains that this claim should not be reviewed because it was not pleaded, argued or presented to the trial referee. We disagree. First, it is not surprising that this claim was not pleaded in the plaintiff's foreclosure complaint since it arose, by its nature, during the foreclosure proceedings. Second, this claim was presented to the trial referee in the plaintiff's motion to correct his report. See infra.

[15] The trial referee found that the plaintiff's expenses to maintain the property were as follows:

| | |
|---|---|
| "Insurance | $57,851.78 |
| Ground Upkeep | $14,575.00 |
| Security | $ 6,654.25 |
| Travel to Connecticut | $ 3,931.26 |
| Appraisal Fee | [$1,300.00] |
| Telephone | $829.27 |
| Plumbing | $109.35" |
| Total | $85,250.91 |

The trial referee originally had found the appraisal fee to be $1000. The referee amended this finding to $1300 when he granted part of the plaintiff's motion to correct his report.

expended by [the plaintiff] for the maintenance and protection of [the property] . . . are prior in right to all other encumbrances except real estate taxes. Reason: These items were necessary for the protection, care and maintenance of the property which, in turn, protected the equity available for encumbrancers. Further, by order of [the] Court, [the plaintiff] expended money for these items."

In his ruling on the plaintiff's motion to correct, the trial referee stated that "[the plaintiff] seeks to add to the report thirty-nine separately numbered factual assertions. . . . Numbers 1, 3, 6, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38 and 39 are denied because either (1) they would not change the conclusions of the Referee, (2) are not supported by the evidence or (3) raise new legal issues not set out in the pleadings or briefs. *(With respect to Number 3 where the movant seeks priority for its maintenance expenses, the Referee was initially inclined to give priority to these expenses but was provided with no authority that expenses for upkeep and maintenance are entitled to a different priority than that of the underlying mortgage.)*" (Emphasis added.)

"An action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties. *Beach* v. *Isacs,* 105 Conn. 169, 176, 134 A. 787 (1926)." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 175, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985); see *Baybank Connecticut, N.A.* v. *Thumlert,* 222 Conn. 784, 610 A.2d 658 (1992) (mortgage foreclosure is an equitable proceeding). Basic principles of equity lead us to conclude that moneys expended to maintain and protect secured property, pursuant to the trial court's authorization,

should be given priority over the encumbrances on that property. When a court authorizes the maintenance and protection of property in foreclosure, it does so for the benefit of the encumbrancers in order to preserve their security and the equity available to the owner. Surely, if, instead of granting the plaintiff's motion, the court had appointed a receiver to maintain the property, that receiver would have been paid his expenses before any encumbrancers were satisfied.[16] The result should be no different simply because the court authorized the plaintiff, rather than a receiver, to preserve the property. Therefore, the plaintiff is entitled to recover, as a first priority, the expenses that the referee found to have been incurred to maintain and protect the property.

The judgment is reversed only with respect to the priority to be given to the $85,250.91 expended by the plaintiff to maintain and protect the property, and the case is remanded with direction to modify the judgment in accordance with this opinion.

In this opinion the other justices concurred.

---

[16] This situation would be analogous to a court establishing priority to a receiver winding up a corporation. See General Statutes § 33-494 which provides in part: "PRIORITY OF CLAIMS IN JUDICIAL WINDING-UP. If the court has undertaken the winding up of the affairs of a corporation . . . claims against the corporation shall be paid in the following order of priority: (1) Reasonable compensation to the receiver . . . for the winding up of the corporation . . . ."